(July 22, 2008)

■ RUTH KASSOVER, as Coexecutor of NATHAN KASSOVER, Deceased, et al., Respondents-Appellants, v PRISM VENTURE PARTNERS, LLC, et al., Appellants-Respondents. [862 NYS2d 493]—

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered January 26, 2007, which, in this action arising out of a merger transaction, to the extent appealed from as limited by the briefs, granted defendants' motion to dismiss the first cause of action to the extent it sought recovery of the "assignment consideration" and to the extent it was asserted against defendants Rosalie Erickson, Richard Baime and Lulu Kassover (the Board defendants), and the second through seventh and ninth and tenth causes of action, and denied defendants' motion to dismiss the eighth cause of action alleging breach of contract against defendant R. Peyton Gibson, unanimously affirmed, with costs. Judgment, same court and Justice, entered October 9, 2007, dismissing defendants' counterclaims, unanimously affirmed, with costs.

Background

This case is part of a decades-long dispute among members of

the Kassover family that has engendered seemingly endless litigation in this and many other courts, both state and federal. This particular litigation involves a merger between the Garden City Company (GCC), a closely-held real estate company of the Kassover family, and Prism Venture Partners (Prism or buyer).

In May 1998, Lawrence Kassover (Lawrence), who was then owner of 5.66% of the shares of GCC, filed a petition for reorganization in United States Bankruptcy Court for the Southern District of New York. The bankruptcy court appointed defendant R. Peyton Gibson bankruptcy trustee to pursue a sale of GCC, in order to maximize the value of Lawrence's shares.

On March 31, 2000, the trustee filed a proposed plan of reorganization (the plan). On April 4, 2000, plaintiff Philip Kassover (Philip) filed an objection to the plan on the ground that it interfered with GCC's internal affairs in violation of a 1976 shareholders agreement among GCC shareholders. At a hearing on June 14, 2000, Philip withdrew his objections, reserving his rights under state law to object to any merger or sale. On the same date, the bankruptcy court confirmed the plan for reorganization and entered a confirmation order.

In its confirmation order, the bankruptcy court declared the 1976 shareholders agreement void ab initio. It also expressly authorized the trustee to make efforts to sell GCC. Philip did not appeal any portion of the confirmation order.

Apparently, after the plan became effective, the trustee tried to sell GCC, but Philip obstructed these efforts when he frustrated due diligence, prevented consultants the trustee hired from updating engineering and environmental reports, and interfered with visits by prospective buyers to GCC properties. On November 30, 2001, the bankruptcy court issued an order enjoining Philip from interfering with the disposition of GCC, stating that the evidence suggested Philip had engaged in a "campaign of obstruction." The court noted that the trustee had established the elements of a claim under New York law for tortious interference with contract and tortious interference with prospective contractual relations.

In July 2002, the trustee, as agent for GCC, entered into a stock purchase agreement and a proposed merger agreement with PVP-GCC Holding Co. II, LLC, a company that Prism formed for the purpose of merging with GCC. Prism's principal owner is defendant Richard Sabella. The merger agreement provided that PVP would pay $2,000 per share to the GCC shareholders (the merger consideration) and required each shareholder to satisfy any "monetary obligations" to GCC as a "condition precedent" to the right to receive the per share

merger consideration (merger agreement § 3.3 [e]). The merger agreement does not define the term "monetary obligations."

The merger agreement also provided for additional compensation (the assignment consideration) of $525 per share contingent upon delivery by a date certain of an assignment of rights under "the Shareholders Agreement."

Section 3.2 (a) of the merger agreement required PVP to deposit the merger consideration with "the Trustee, as trustee (the 'Disbursing Agent') . . . as agent for the holders of shares of Garden City Stock." That section goes on to state, "[p]ending distribution pursuant to Section 3.2 (b) hereof of the cash deposited with the Disbursing Agent, all cash shall be held in trust for the benefit of Garden City Shareholders." However, section 15.2 contemplates a Garden City shareholder's representative who is different from the trustee.

The trustee signed the merger agreement as "R. Peyton Gibson the Court Appointed Liquidating Trustee of the Estate of Lawrence Kassover, as agent." Section 15.15 states that "[t]he Buyer understands and acknowledges that the Trustee is acting solely as agent of the Corporation and that the Trustee shall have no personal liability pursuant to this Agreement." Finally, section 15.11 states that the Garden City shareholders are third-party beneficiaries under the merger agreement.

On July 26, 2002, a sufficient majority of GCC shareholders approved the merger over plaintiffs' objections. On July 29, 2002, the bankruptcy court held an evidentiary hearing, during which, according to plaintiffs, defendant Sabella represented that, in addition to the per share merger consideration and the assignment consideration set forth in the merger agreement, PVP would pay to the trust and other GCC shareholders other consideration (additional consideration) worth $8.5 million (representing an additional $592 per share). Thus, according to plaintiffs, the consideration available to shareholders was: (1) the $2,000 per share merger consideration; (2) the $525 per share in assignment consideration and (3) the $592 per share in additional consideration.

After the hearing, the bankruptcy court issued an order authorizing the transaction (the merger order). The merger order stated, among other things, that the "Trustee has not breached any duty to [GCC] or its shareholders as a result of her execution of the [agreement]" and that Prism/PVP was a "good faith purchaser." The merger order also required that the offer to each of GCC's shareholders to purchase their shares be no less than $2,500 per share.

The merger of GCC with PVP closed in August 2002. Accord-

ingly, pursuant to section 3.2 (f) of the merger agreement, plaintiffs' interests in GCC ended. Philip appealed the merger order, but was not successful, apparently because he failed to exercise his appellate rights properly and seek a stay of the transaction (*see In re Kassover*, 98 Fed Appx 30 [2d Cir 2004]).

On May 22, 2003, plaintiffs timely submitted their share certificates to defendant Gibson in her capacity as disbursing agent for the funds. Plaintiffs allege that Gibson, following the directions of Prism, refused to pay plaintiffs the merger consideration of $2,000 per share. In or about June 2003, Prism, PVP and Sabella asserted to Gibson that she should withhold the merger consideration from plaintiffs because of alleged "monetary obligations" plaintiffs owed to GCC.

Several months later, again allegedly following instructions from Prism, Gibson distributed $322 per share to the estate and $169 per share to Philip. After plaintiffs filed this action, Gibson paid the balance of the merger consideration ($1,678 per share) to the estate.

In July 2005, plaintiffs commenced this action, alleging that they did not receive their full entitlement under the merger agreement.* Plaintiffs have stated they are not challenging the merger itself. Specifically, plaintiffs allege defendants improperly withheld part of the $2,000 per share consideration by accusing plaintiffs of having "monetary obligations" to GCC. Plaintiffs claim that defendants unreasonably denied them the $525 per share assignment consideration, although plaintiffs concede they never filed the assignment of claims that would have entitled them to receive the assignment consideration. Finally, plaintiffs contend that all other shareholders received $592 per share in additional consideration that plaintiffs also should have received.

The complaint asserted 12 causes of action: violation of Business Corporation Law § 501 (c) against Prism, PVP, GCC, Sabella and the Board defendants; breach of fiduciary duty against the Board defendants; fraud against Prism, PVP, GCC and Sabella; constructive trust and unjust enrichment against Prism, PVP, GCC and Sabella; breach of the 1963 shareholders agreement against various defendants; breach of fiduciary duty against Gibson; breach of contract against Gibson; aiding and abetting breach of fiduciary duty against Prism, PVP, GCC and Sabella; tortious interference with contract and injunctive relief against Prism, PVP, GCC and Sabella; and action on judgments

---

\* In August 2005, defendants removed this case to federal court that referred it to the bankruptcy court. In January 2006, the bankruptcy court remanded the action to state court.

and claims against GCC. Plaintiffs are not appealing the dismissal of these final two causes of action.

Defendants asserted counterclaims accusing Philip of various acts of mismanagement of GCC for a period spanning 10 years. The counterclaims did not rely on Philip's obstructionist conduct that nearly derailed merger efforts.

On January 19, 2007, the court dismissed all of plaintiffs' claims except for a portion of the first cause of action and the eighth cause of action. On September 25, 2007, the court granted plaintiffs' motion and dismissed defendants' counterclaims in their entirety.

## Discussion

Defendants appeal the January 19, 2007 order to the extent it sustained plaintiffs' eighth cause of action and a portion of the first cause of action. Plaintiffs cross appeal from so much of the order that dismissed the first cause of action against the Board defendants as well as most of the other causes of action the court dismissed in its decision. Defendants also appeal the order dismissing their counterclaims.

### I. The January 19, 2007 Order

The court was correct when it held that plaintiffs state a valid cause of action under Business Corporation Law § 501 (c), alleging that defendants failed to pay them the full $2,000 per share merger consideration and the additional $592 per share that the other shareholders received (see Beaumont v American Can Co., 160 AD2d 174 [1990]). However, plaintiffs concede that they did not timely submit the assignment that the merger agreement required shareholders to deliver in order to receive the assignment consideration. Therefore, plaintiffs are not eligible to receive the assignment consideration.

To the extent plaintiffs' cause of action for breach of fiduciary duty relies upon alleged "self-dealing acts" of the Board defendants to engineer the merger, the bankruptcy court's approval of the merger is a binding rejection of those claims (see Loving v Abbruzzese, 298 AD2d 749, 751 [2002]). Further, plaintiffs admit they are not challenging the merger itself and the Board no longer existed at the time the acts plaintiffs complain of occurred. Therefore, under these circumstances, there is no cause of action against the Board defendants for breach of fiduciary duty.

Plaintiffs have also alleged that certain of defendant shareholders breached a 1963 shareholders agreement by agreeing to sell their shares to Prism and PVP before the merger. Plaintiffs

make this claim despite repeatedly insisting that they are not challenging the merger itself. These two positions appear to contradict themselves and are tantamount to challenging the merger through the backdoor. Nevertheless, plaintiffs should have raised this issue in the bankruptcy proceedings. In failing to challenge any of this in the bankruptcy court, plaintiffs have waived their challenge at this point.

It was also proper to dismiss plaintiffs' causes of action for unjust enrichment and constructive trust because the merger agreement covers the same subject matter (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 23 [2005]; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382 [1987]). The fraud cause of action similarly must fail in the face of the express terms of the merger agreement (*see Rivas v AmeriMed USA, Inc.*, 34 AD3d 250 [2006]). Moreover, because Sabella qualified that the amount of the additional consideration depended upon external factors such as taxes, the alleged misrepresentations about the additional consideration plaintiffs point to were in the nature of mere predictions or expectations. These are not actionable (*see ESBE Holdings, Inc. v Vanquish Acquisition Partners, LLC*, 50 AD3d 397 [2008]; *Naturopathic Labs. Intl., Inc. v SSL Ams., Inc.*, 18 AD3d 404 [2005]). However, as discussed above, to the extent other shareholders actually received additional consideration, plaintiffs have stated a claim due to disparate treatment.

The cause of action for breach of fiduciary duty against Gibson duplicates the breach of contract claim against her. Therefore, it was proper for the court to have dismissed it. Because the breach of fiduciary duty claim fails, there can be no cause of action for aiding and abetting breach of that fiduciary duty. However, the motion court properly sustained the eighth cause of action for breach of contract against Gibson. Plaintiffs are express third-party beneficiaries under the merger agreement with the right to enforce its terms. The merger agreement places on Gibson the obligation to hold all cash "in trust for the benefit of the Garden City Shareholders." To the extent that Gibson did not do so in that she failed to disburse to plaintiffs the $2,000 per share for their stock, she can be sued for breach of contract. Defendants' argument based on section 15.15 that Gibson has no personal liability under the merger agreement is unavailing because that section refers only to personal liability to the "Buyer," i.e. Prism.

The court properly dismissed the tenth cause of action for tortious interference with contract against defendants Prism, PVP, GCC and Sabella because, as plaintiffs readily admit, these parties were not strangers to the merger agreement (*see Koret,*

*Inc. v Christian Dior, S.A.*, 161 AD2d 156, 157 [1990], *lv denied* 76 NY2d 714 [1990]). Nor have plaintiffs made allegations sufficient to overcome these defendants' clear economic interest in the merged entity (*see Barrett v Toroyan*, 39 AD3d 366 [2007]).

II. The Counterclaim Order

We affirm the order dismissing the counterclaims. Defendants describe corporate action spanning a period of more than 10 years and allege that Philip breached his obligations to GCC in engaging in those activities, such as renting out properties at a discount or failing to facilitate building projects to obtain higher rents. Defendants claim that as a result of the many poor decisions that Philip made, GCC was damaged to the tune of millions of dollars. However, defendants fail to allege bad faith, a conflict of interest or the self-dealing necessary to overcome the business judgment rule (*see Auerbach v Bennett*, 47 NY2d 619, 629 [1979]). Defendants' claims are all the more amorphous given the near complete lack of dates surrounding Philip's alleged malfeasance. Thus, the court was correct in dismissing the first and second counterclaims because of the business judgment rule.

The single paragraph (¶ 119) that alleges Philip engaged in a "premeditated campaign" to drive down the value of GCC, presumably to purchase it for himself at a discount, contains no facts to support this scheme. Although the bankruptcy court did indicate that Philip may have obstructed the sale of GCC by, inter alia, preventing the inspection of properties, defendants do not incorporate allegations surrounding these events into their counterclaims.

More troubling are the allegations in paragraph 151 of the counterclaims accusing Philip of taking $50,000 in advances from GCC. However, defendants go on to state that "[p]laintiffs were and may still be indebted to [GCC]" for this amount. Mere speculation cannot support a cause of action for corporate waste or breach of fiduciary duty. Moreover, it would appear that the decision in *Kassover v Fiedler* (Sup Ct, NY County, Apr. 11, 2006, James, J., index No. 123407/2000) has discharged at least a portion of the specific debt about which defendants complain.

The third counterclaim alleges monetary obligations based on the same 10-year span of misconduct in which Philip allegedly engaged. While we do not necessarily take as restrictive a view of the term "monetary obligations" as the motion court did, because the alleged "monetary obligations" claim relies on the same course of conduct that the business judgment rule protects, this claim must fail as well.

We have considered the parties' remaining arguments for af-

firmative relief and find them unavailing. Concur—Lippman, P.J., Gonzalez, Moskowitz and Acosta, JJ. [*See* 2007 NY Slip Op 34137(U).]