■ RUTH KASSOVER et al., Appellants-Respondents, v PVP-GCC HOLDINGCO II, LLC, et al., Defendants, and R. PEYTON GIBSON, Respondent-Appellant. PRISM VENTURE PARTNERS, LLC, et al., Nonparty Respondents. RUTH KASSOVER et al., Respondents, v PVP-GCC HOLDINGCO II, LLC, et al., Appellants, et al., Defendant. [905 NYS2d 13]—

Judgment, Supreme Court, New York County (Barbara R. Kapnick, J.), entered June 9, 2009, pursuant to an order, same court (Helen E. Freedman, J.), entered July 2, 2008, inter alia, in favor of plaintiffs and against defendant Gibson in her capacity as disbursing agent, dismissing all claims against defendants Sabella, Prism Venture Partners, LLC (Prism), and Gibson in her personal capacity, and severing all proceedings with respect to defendants PVP-GCC Holdingco II, LLC (PVP) and the Garden City Company, Inc. (GCC), unanimously modified, on the law, to reinstate plaintiffs' claims for $592 per share as against Prism and Sabella and for breach of contract as against Gibson in her individual capacity, to reduce the total amount awarded to plaintiff Philip Kassover to $293,253.17, and to reduce the total amount awarded to plaintiff estate to $1,181,564.97, and otherwise affirmed, without costs. Judgment, same court and Justice, entered October 27, 2009, pursuant to an order, same court (Helen E. Freedman, J.), entered July 2, 2008, inter alia, in favor of plaintiffs and against defendants PVP and GCC, unanimously modified, on the law, to reduce the total amount awarded to plaintiff Kassover to $293,606, and to reduce the total amount awarded to plaintiff estate to $1,181,565, and otherwise affirmed, without costs.

Plaintiffs were properly granted partial summary judgment as against PVP, GCC, and Gibson on their claims for payment of the $2,000 per share merger consideration, there being no dispute that plaintiffs had tendered their shares to Gibson as required by the merger agreement, and that plaintiffs were paid only a portion of the $2,000 per share consideration called for in that agreement. Defendants' claim that they properly withheld payment because plaintiffs had outstanding "monetary obligations" owing to GCC was properly rejected in view of the prior dismissal of defendants' counterclaims based on the same premise (see 53 AD3d 444, 445-447, 450 [2008]). We have considered and rejected defendants' other arguments in this regard.

Plaintiffs were properly awarded prejudgment interest at the statutory rate of 9% (CPLR 5001, 5004), even to the extent their claim for the $2,000 per share merger consideration was made pursuant to Business Corporation Law § 501 (c). Defendants' reliance on *Matter of Bello v Roswell Park Cancer Inst.* (5 NY3d 170 [2005]) is misplaced, since the claim in that case was made pursuant to a statute (Civil Service Law § 77) that provided a specific remedy that did not include prejudgment interest. In contrast, Business Corporation Law § 501 (c) provides no remedy for its violation. Nor is there anything in

the merger agreement that addresses interest on funds wrongfully withheld. Section 3.2 thereof only specifies how the disbursing agent is to deposit or invest the funds before distribution (*compare Lang v Blumenthal*, 203 AD2d 252, 254 [1994], *overruled on other grounds by Vafa v Cramer*, 212 AD2d 593 [1995]).

Because the court expressly directed defendants to pay interest on various sums "representing interest due but not paid," i.e., improper compound interest (*see Long Playing Sessions v Deluxe Labs.*, 129 AD2d 539, 540 [1987]), we reduce the judgments as above indicated.

In its January 2007 order, not at issue on this appeal, the motion court held that the complaint stated a cause of action as against Gibson for breach of the merger agreement in alleging that she breached her duties thereunder as disbursing agent by failing to pay plaintiffs $2,000 per share for their GCC stock. The court also held that plaintiffs stated a cause of action pursuant to Business Corporation Law § 501 (c) as against the various defendants, including Sabella and Prism. This Court affirmed those rulings (53 AD3d at 448), and specifically with regard to Gibson stated: "The merger agreement places on Gibson the obligation to hold all cash 'in trust for the benefit of the Garden City Shareholders.' To the extent that Gibson did not do so in that she failed to disburse to plaintiffs the $2,000 per share for their stock, she can be sued for breach of contract. Defendants' argument based on section 15.15 that Gibson has no personal liability under the merger agreement is unavailing because that section refers only to personal liability to the 'Buyer,' i.e. Prism" (*id.* at 449).

In granting the cross motion to dismiss as against Sabella and Prism, the motion court based its decision on a purported concession by plaintiffs that only PVP, GCC, and Gibson (as disbursing agent) were responsible for paying the $2,000 per share to plaintiffs, and its belief that plaintiffs were not seeking anything else from Sabella and Prism. Overlooked was plaintiffs' separate claims for an additional $592 per share made against all of the defendants, including Sabella and Prism, a claim subsequently sustained by this Court (53 AD3d at 448). The motion court also misread plaintiffs' purported concession, which conceded only that "the parties responsible for paying the $2000 per share to plaintiffs are defendants PVP (as buyer), Garden City as the surviving corporation, and Gibson as Disbursing Agent," and expressly stated that plaintiffs' motion for partial summary judgment on the $2,000 per share claim did not "require a ruling involving Gibson's, Sabella's or [Prism's]

'personal' or corporate liability." We find Prism's and Sabella's arguments on this point unavailing, and accordingly modify to reinstate the claim for $592 per share as against them.

With respect to Gibson's cross motion pursuant to CPLR 3211, this Court's prior order holding that she could be sued for breach of contract in her individual capacity constitutes law of the case that was binding on the motion court (*see Miller v Schreyer*, 257 AD2d 358, 360-361 [1999]). Further, as with Sabella and Prism above, the motion court was mistaken in its belief that plaintiffs had conceded that Gibson could not be held personally liable. While Gibson did not sign the merger agreement in her individual capacity, plaintiffs do seek to hold her liable for failure to comply with her obligations as disbursing agent, and do not seek anything with regard to her position as trustee, an office that entailed entirely different responsibilities. Nor does the merger agreement specifically exempt Gibson from personal liability to plaintiffs. Thus, we reject Gibson's argument that reference to her as "Trustee" in the merger agreement precludes her personal liability for failure to comply with her obligations as disbursing agent (*see Societe Generale v U.S. Bank Natl. Assn.*, 325 F Supp 2d 435, 437 [SD NY 2004], *affd* 144 Fed Appx 191 [2d Cir 2005]). Accordingly, we modify to reinstate the breach of contract claim as against Gibson in her individual capacity.

The motion court properly denied leave to amend the answer to assert counterclaims that were merely restatements of the previously dismissed counterclaims or that alleged conclusory, speculative and/or time-barred claims based on misconduct by plaintiff Philip Kassover. Indeed, similar to the initial counterclaims, the proposed new counterclaims seek to assert claims reaching back to when Philip was the chief executive of GCC, even though the motion court and this Court have held that such alleged misconduct was protected by the business judgment rule and was not a proper basis for a claim absent nonconclusory allegations of "bad faith, a conflict of interest or the self-dealing necessary to overcome the business judgment rule" (53 AD3d at 450; *see also Fischbein v Beitzel*, 281 AD2d 167 [2001], *lv denied* 96 NY2d 715 [2001]).

We have considered the appellants' remaining claims and find them unavailing. Concur—Mazzarelli, J.P., Sweeny, Catterson, Renwick and Manzanet-Daniels, JJ.