■ WPA/PARTNERS LLC, Appellant, v PORT IMPERIAL FERRY CORP. et al., Defendants, and CITY OF NEW YORK et al., Respondents. [763 NYS2d 266] —Order, Supreme Court, New York County (Faviola Soto, J.), entered October 15, 2002, which denied plaintiff-appellant's motion for a *Yellowstone* injunction, unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, the motion granted, and the matter remanded for further proceedings.

The underlying consolidated action is for, inter alia, a declaratory judgment, reformation of contract, and damages from breach of contract and partial eviction. Plaintiff is a tenant, and the City is the landlord, of historic Pier A and adjacent underwater lands in the Battery Park vicinity of lower Manhattan. The 49-year lease was executed in 1997 pursuant to the City's plan of converting the area into a commercial attraction offering several commercial services, as well as renovation of a visitors' center within a three-story landmark Victorian building located on the pier. Under a sublease from plaintiff, the New York City Parks Department would operate the visitors' center at a token rent, in exchange for New York City paying a portion of the costs of renovating the building. By May of 2002, plaintiff had expended in excess of $22 million to obtain the necessary permits, replace substantial portions of the pier's structure, rebuild the granite breakwater, and to conduct additional renovation, with the result that by that time, approximately 70% of the project had been completed. Additionally, plaintiff was obligated to pay annual rent, ultimately $440,000 per annum, after an initial period of reduced rent. The lease authorized an abatement of rent, under

appropriate circumstances, during an initial period of "Unavoidable Delays" should governmental authorities fail to timely grant discretionary approvals.

Plaintiff claimed the City obtained funding from the State to pay a portion of its share of the visitors' center renovation and agreed to compensate plaintiff by amending the lease. The parties dispute the validity of the amendment to the lease, negotiated by defendant New York City Economic Development Corporation but unsigned by Deputy Mayor Mastro, whereby the City purportedly reduced the rent as a consequence of its dilatory conduct regarding its obligation to partially finance the visitors' center renovation. Thereafter, the City sent rental bills that appeared to incorporate a reduction in the amount of rent under the amendment, and accepted payment in such amount. The rent, and delays, and the validity of the amendment are all in dispute in the underlying action, matters which are not presently before us. The City, in June 2000, billed plaintiff retroactively for the additional rent amounts that plaintiff contends were abated in the amendment, though the City waited until May 2001 to declare the amendment ineffective.

In August 2001, plaintiff commenced a CPLR article 78 proceeding to either compel the City to sign the amendment or to declare the amendment effective notwithstanding the absence of the City's signature, with an adjudication of the rent due.

In the immediate aftermath of the events of September 11, 2001, plaintiff allowed the City's Emergency Medical Service to use the pier to treat victims and to accommodate evacuation. However, on September 26, 2001, the City, without court order, seized the premises and thereafter excluded plaintiff from possession. Moreover, the City allowed defendant Port Authority to construct a ferry terminal on the pier which plaintiff had reconstructed, and also allowed other vendors and commercial establishments to operate on the premises. Since November 2001, defendant New York Waterway has been conducting ferry service from that pier. In January 2002, plaintiff commenced a damages action for $30 million relating to its having been allegedly wrongfully evicted and for breach of contract, and to recover possession. In its answer, the City maintained that its actions were authorized as emergency measures under the lease.

Meanwhile, in or about October 2001, the City commenced a Civil Court nonpayment proceeding, but, having served plaintiff at the very location from which the City had ousted

plaintiff, the proceeding was ultimately dismissed. Civil Court also indicated that insofar as the City was already in possession of the premises, it would have to commence a plenary proceeding to recover rent. The order dismissing the nonpayment proceeding was dated June 26, 2002. On July 19, 2002, the City served plaintiff with a notice of default, providing for a cure period ending August 2, 2002.

Plaintiff moved for a *Yellowstone* injunction (*First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630 [1968]), arguing, inter alia, that the default notice was an impermissible end run around plaintiff's pending declaratory judgment action, as well as an attempt to circumvent discovery in that regard. Plaintiff submitted an affidavit that "it wants and will be able to cure," which the City argues as being merely conclusory and devoid of a showing that it has the funds to cure the default. The City also disputed the effectiveness of the lease amendment on technical grounds, and specifically objected to plaintiff's contention that the City's billing changes after the amendment reflected its acknowledgment of the amendment and hence constituted partial performance thereof. Plaintiff, though, maintains, inter alia, that insofar as the default was improperly taken, it can cure by prevailing on the merits in this action, so that whether or not it can monetarily cure the purported default is besides the point. Several other contentions are made by both sides that form the gravamen of the underlying actions and are not properly before us. This recitation is made only in connection with our evaluation whether, under these circumstances, a *Yellowstone* injunction is warranted.

We conclude that on this record there is a sufficient showing, especially in view of plaintiff's significant investment in a valuable leasehold, that the motion court's denial of injunctive relief was an improvident exercise of discretion.

A *Yellowstone* injunction "maintains the status quo so that a commercial tenant, when confronted by a threat of termination of its lease, may protect its investment in the leasehold by obtaining a stay tolling the cure period so that upon an adverse determination on the merits the tenant may cure the default and avoid a forfeiture" (*Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc.*, 93 NY2d 508, 514 [1999]). The party seeking *Yellowstone* relief must demonstrate that "it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises" (*cf. Zona, Inc. v Soho Centrale*, 270 AD2d 12, 13 [2000], quoting *Graubard Mollen Horowitz Pomeranz & Shapiro, supra* at 514 [internal

quotation marks omitted]). We have long recognized that the law in this regard disfavors forfeiture, and a demonstration of success on the merits is not a prerequisite to such relief (*Herzfeld & Stern v Ironwood Realty Corp.*, 102 AD2d 737, 738 [1984] and citations within). Moreover, the tenant need not at this juncture prove its ability to cure; rather, "[t]he proper inquiry is whether a basis exists for believing that the tenant * * * has the ability [to] cure through any means short of vacating the premises" (*Herzfeld & Stern, supra* at 738; *accord Jemaltown of 125th St. v Leon Betesh/Park Seen Realty Assoc.*, 115 AD2d 381, 382 [1985]). This record persuades us that plaintiff has the motivation and the plausible means of curing the "default" by virtue of its preexisting declaratory judgment action, though we caution that the outcome of that proceeding is, of course, presently uncertain. Nevertheless, we have recently noted the general proposition that one who frustrates another's performance may not hold the frustrated party in breach of contract (*Stardial Communications Corp. v Turner Constr. Co.*, 305 AD2d 126 [2003]). Moreover, in view of plaintiff's extensive expenditures thus far, the drastic forfeiture of this long-term lease would impermissibly allow the City to reap a windfall under circumstances still being litigated and, furthermore, would essentially subvert plaintiff's previously commenced actions by deciding the City's latter-commenced holdover proceeding on basically the same issues as those raised by plaintiff. Finally, in view of the considerable value already invested by plaintiff in improvements on the property, we dispense with the requirement of a bond (*John A. Reisenbach Charter School v Wolfson*, 298 AD2d 224 [2002]; *Kuo Po Trading Co. v Tsung Tsin Assn.*, 273 AD2d 111 [2000]). Concur—Tom, J.P., Mazzarelli, Andrias, Friedman and Marlow, JJ.