OPINION OF THE COURT
Daniel R. Palmieri, J.
The plaintiffs’ motion for a stay of termination of their commercial leasehold interests in defendant’s shopping mall pendente lite pursuant to First Natl. Stores v Yellowstone Shopping Ctr. (21 NY2d 630 [1968]), or, in the alternative, for a preliminary injunction pursuant to CPLR 6301, is denied in its entirety.
This matter stems from delays in construction of three restaurants plaintiffs planned to open in defendant’s (sometimes, the Mall) shopping center in Massapequa, New York. Each plaintiff LLC entered into a lease with the defendant on March 30, 2012. The defendant apparently was doing business as Westfield Sunrise, the name on the cover sheet of the lease, and as noted below defendant’s affiant identifies himself as vice-president of Westfield, LLC, managing agent for the Mall.
The leases and amendments thereto contemplated a period of construction of plaintiffs’ restaurants, during which rent would not be charged. The time from which rent would begin (commencement date) would be the earlier of when each restaurant would open for business, or the fixed dates of January 15, 2014 (LIDC I), March 1, 2014 (LIDC III) and April 15, 2014 (LDIC IV). The leases all contain a force-majeure clause excusing a delay in performance based on, among things, “restrictive government laws or controls; delayed governmental or municipal action.” Financial hardship was excluded as a force-majeure event, as was the inability of contractors to meet contract dates “unless caused by such governmental acts” or “acts of Landlord.” The clause also states, however, that the occurrence of any such event shall not excuse the tenant’s obligation to pay rent “from and after the Commencement Date.” Plaintiffs hired a general contractor, PC Consulting Management Corp., with the approval of the Mall; plaintiffs note that the parties selected this contractor jointly after plaintiffs initially had notified the *887 Mall that the cost of the project was going to be too high to allow them to build. Work thereafter began at the site.
However, in August of 2013 the Town of Oyster Bay, through its Commissioner of Building and Planning, issued a stop work order based on purported violations of the Town Code’s requirement that the contractor have an apprenticeship program in place. The contractor hired by plaintiffs, whose work had been halted by these orders, filed a CPLR article 78 petition challenging the Town’s actions (P.C. Consulting Mgt. Corp. v Town of Oyster Bay, Sup Ct, Nassau County, index No. 11212/13), which was assigned to this court. Upon execution of the order to show cause on September 13, 2013, bringing on the proceeding, the court stayed the stop work order, and on September 24, 2013 stayed revocation of the building permits by Commissioner Ippolito, which occurred after the case was commenced. Both stays, of course, were temporary, pending determination of the underlying proceeding.
That occurred on November 8, 2013, at which time the undersigned granted the petition on the record in open court and reinstated the building permits, allowing work to continue. Although it directed submission of a judgment, the court also offered to “so order” the transcript to create an appealable document.[1] According to Paul Derrico, an “authorized representative” of plaintiffs, informal settlement discussions then ensued between the Mall and the Town after the court’s decision. According to Derrico, the Town had been taking actions against other Mall tenants, construction had been on “lockdown” because of those actions, and plaintiffs had been informed by the Mall that they should wait to submit a judgment until the Mall was able to resolve its issues with the Town.[2]
Derrico also states that in late January of 2014 the Town asked the court not to enter judgment as a settlement in *888 principle had been reached.[3] Apparently, however, more discussions ensued, as in March 2014 the Mall asked the petitioner in the article 78 proceeding—then represented by the same attorneys who represent the plaintiffs here—not to submit a judgment in light of those discussions. This state of affairs continued until July of 2014, when the Mall sought entry of such a judgment.
The intervenor petitioners noted in footnote 2 and the respondent in the article 78 proceeding ultimately each submitted a proposed judgment and counterjudgment, and the latter was signed on July 28, 2014, with certain modifications not relevant here.
Prior to the execution of the judgment, however, the parties already had taken adversarial positions regarding the obligation to pay rent. By letter on behalf of each tenant dated January 13, 2014, plaintiffs notified Westfield that
“[p]er your discussion with the Tenant and agreement that the Mall is under a complete lockdown due to the repeated actions of the building commissioner . . . the Tenant, the Landlord, other tenants in the Mall, and the Mall in general have all experienced extreme difficulty with construction of any kind due to the [acts of] the Building commissioner . . . despite the several favorable court rulings on the [matter], the [Town] continues to be uncooperative . . . with . . . the Tenant’s general contractor . . . essentially preventing them from working at the Mall and as a consequence . . . prevents the Tenant from fulfilling its construction obligations under the Lease to build out the Premises in order to permit the Tenant to conduct business . . . Tenant hereby notifies the Landlord of the indicated force majeure events, thus tolling all of Tenant’s obligations under the Lease, including, but not limited to, the commencement of rent, until the matter is resolved.”
On February 7, 2014, counsel for the Mall responded by stating that the construction delays were caused by the tenants’ failure to employ union labor with an apprenticeship program, *889 which he claimed was a breach of certain lease conditions[4] and, in addition, that even if the force-majeure clause could be invoked it did not excuse the payment of rent.
Ultimately, no rent having been paid under any of the leases, notices of default based thereon were served on September 5, 2014, threatening, inter alia, termination of the leases unless rent was paid prior to expiration of the stated cure period in the notice, leading to the present action and motion.
Rob Wyant, vice-president of Westfield, LLC, as noted the managing agent for the Mall, submits an affidavit in which he does not deny the discussions with the Town or with plaintiffs concerning a delay in submission of a judgment in the article 78 proceeding. He contends, however, that these discussions were not intended to and had no effect on the construction projects, but rather that the Mall was doing no more that acting as an intermediary in an attempt to revive construction, in which it had a vested interest.
He further states that there was no legal impediment to construction of the restaurants after the court acted, and stresses that the Mall had asked plaintiffs to resume construction as it continued to work with them and the Town to resolve their issues. He states, upon information and belief, that the original contractor (petitioner in the article 78 proceeding) had been terminated in or about November 2013, but that no new contractor had been engaged, notwithstanding the Mall’s urgings.
Wyant further asserts, on information and belief, that plaintiffs do not have the funds to resume construction, and were attempting to recover money from their contractor’s performance bond. He also states that plaintiffs represented that they cannot resume construction until funds from the bond are realized. Thus, he contends, the reason for the failure to perform is not a force-majeure event, but rather an inability to fund the construction. In any event, payment of rent is a stated exception to a force-majeure event, and he therefore denies any right of plaintiffs not to pay rent as of the commencement dates noted above.
In his reply Derrico does not deny that the tenants were urged to resume construction after their contractor prevailed in the article 78 proceeding. Indeed, he does not challenge the asser *890 tion by Wyant that the actual reason that work stalled at the Mall was not the instruction/request of the Mall not to submit a judgment, but rather that the tenants simply did not have the funds to continue. This appears to be confirmed by Derrico’s contention that the Mall did not come forward with the financial assistance promised in the leases, arguing, in effect, that it was the Mall’s breach of its obligations to provide that funding that led to the inability to complete the project.
However, in defendant’s surreply (permitted here as new matter was raised in reply, and agreement of counsel to its submission), reference is made to lease provisions indicating that payments were to be made as reimbursement of construction expenses incurred by the tenants as work progressed, and was completed. In view of this proof the court notes that Derrico did not state or imply that the tenants actually paid the sums they assert are owed, but were not reimbursed.
In view of the foregoing, the motion must be denied.
A Yellowstone injunction is intended to maintain the status quo so that a commercial tenant, threatened by a termination of its lease, can protect its leasehold investment by obtaining a stay tolling the cure period and avoid a forfeiture of its lease. (Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc., 93 NY2d 508 [1999]; Barsyl Supermarkets, Inc. v Avenue P Assoc., LLC, 86 AD3d 545 [2d Dept 2011].) In order to qualify for the injunction, the tenant must demonstrate that (1) it holds a commercial lease, (2) it received a notice of default, a notice to cure, or a threat of termination of the lease, (3) it made its request for the injunction prior to both termination of the lease and the period to cure, and (4) it is prepared and has the ability to cure the alleged default by any means short of vacating the premises. (Graubard; Barsyl Supermarkets, Inc.; see also Trump on the Ocean, LLC v Ash, 81 AD3d 713 [2d Dept 2011].)
The required showings are less stringent that what is required for a preliminary injunction (Trump on the Ocean), and a demonstration of probable success on the merits is not a prerequisite for relief. (WPA/Partners v Port Imperial Ferry Corp., 307 AD2d 234, 237 [1st Dept 2003].) However, all the required showings must be made, including the ability to cure a rent default, if that is the basis of the landlord’s action against the tenant, or the injunction will be denied. (Definitions Personal Fitness, Inc. v 133 E. 58th St. LLC., 107 AD3d 617 [1st Dept 2013].)
Initially, the court finds that the Town’s actions were sufficient to invoke the force-majeure clause as a result of *891 governmental action—which is not disputed by the defendant on this motion—at least until the issuance of a final determination of the article 78 proceeding in the contractor’s favor. However, it also finds that rent is excepted under the leases’ force-majeure clause, and nonpayment of rent is the stated default. It thus had to be paid from the commencement dates as provided in the leases and their amendments. The key issue here thus becomes whether those commencement dates are valid and should be enforced. This in turn is predicated on what, if anything, the Mall did to interfere with the plaintiffs’ ability to proceed and open their businesses so that they could pay the rent as of those dates.
Although there is some authority in the context of a Yellowstone application that actions of the landlord which serve to frustrate a tenant’s performance under the lease may serve to bar enforcement based on the failure of a tenant to perform (see WPA/Partners LLC v Port Imperial Ferry Corp. at 237), the actions allegedly taken by the Mall are simply immaterial to the tenants’ performance. Even assuming that the tenants were asked to “hold off’ on entering a judgment, there is no denial (and the Derrico affidavit on the intervention motion confirms) that the contractor was no longer on the job as of November 2013. That contractor was not replaced by the tenants. Critically, there is also no denial that the tenants were urged by the Mall to hire a new contractor and to proceed with the construction, as opposed to submission of the judgment, after the court vacated the Town’s stop work order and directed reinstatement of the building permits.
Further, because the undersigned had offered to “so order” the transcript when it decided the article 78 proceeding in the contractor’s favor, and actually did so only two weeks later, petitioner—as noted, then represented by the same attorneys who represent the tenants here—did not have to wait for entry of a judgment to proceed with construction as a legal matter, if the enforceable nature of the November 8 determination was a concern. Indeed, the absence of a judgment, which officially terminates the special proceeding (CPLR 411, 7806), meant that the court’s earlier temporary orders were still in effect and were sufficient to allow the work to continue in any event. Thus, the fact that there was no final judgment certainly was not a legal bar to continued work at the site. Accordingly, because there is no proof that the defendant did not also urge plaintiff tenants to delay the resumption of construction, any direction from de *892 fendant to plaintiffs not to have a final judgment entered does not provide either a legal or equitable basis for finding here that the landlord is estopped from enforcing the rent obligation on the commencement dates established in the leases/ amendments. Any negotiations/contacts between the Town and the Mall, what ever their character or goal, does not affect the foregoing.
Thus, and without establishing a cause attributable to the Mall, the plaintiffs have not completed construction, have no operating businesses generating income, and have not pointed to any other independent source of funds, or that access to sufficient funds to cure the rent default is imminent. The court accordingly finds that they have failed to satisfy that prong of the required showings for a Yellowstone injunction that they are prepared and have the ability to cure the rent default. (Definitions Personal Fitness, Inc. v 133 E. 58th St. LLC.) The application for such an injunction is therefore denied.
The alternative request for a preliminary injunction pursuant to CPLR 6301 must also be denied, as in view of the foregoing the plaintiffs have failed to show likelihood of success on the merits, which is essential to qualify for this relief. (See e.g. Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990]; W.T. Grant Co. v Srogi, 52 NY2d 496 [1981].)

. (Transcript of proceedings at 13.) The court takes judicial notice of its determination and the transcript memorializing that determination. The transcript was in fact “so ordered” on November 22, 2013.

. The court also takes judicial notice of an order in the article 78 case, dated March 4, 2014, which granted certain LLCs the right to intervene therein, thereby giving them the ability to participate in further proceedings, specifically, any appeal, and submission of a judgment as directed on November 8. Further, the affiant in support of the motion to intervene was Paul Derrico, who stated that “[o]n November 26, 2013, [the contractor/petitioner] terminated its contracts with [tenants].” It should be noted that the intervenors in the article 78 are not the same LLCs as the plaintiff tenants here, but whatever their status, clearly represented the tenants’ interests.

. No record of such a request is presented or has been located in the court file of the proceeding, but this does not mean that an informal request had not been made to chambers.

. As stated above, the absence of such a program was the basis of the Town’s initial stop work order, which led to the article 78 proceeding.