**In re HRH CONSTRUCTION LLC, et al., Debtors.**

**NYU Hospitals Center, Plaintiff/Appellant,**

v.

**HRH Construction LLC, Defendant/Respondent.**

**Curtis Partition Corporation, Plaintiff/Respondent,**

v.

**HRH Construction LLC, NYU Hospitals Center, Defendants.**

No. 12–CV–1384 (DAB).

United States District Court, S.D. New York.

Signed March 12, 2015.

William R. Fried, Herrick, Feinstein LLP, New York, N.Y., Pamela Ann Hulnick, Kirsch, Gartenberg & Howard, Hackensack, N.J., for Appellee.

Henry August Heider Rosenzweig, Holland & Knight LLP, New York, N.Y., for Appellant.

## MEMORANDUM & ORDER

DEBORAH A. BATTS, District Judge.

Plaintiff–Appellant NYU Hospitals Center ("NYU") appeals from the Order and Judgment of the Bankruptcy Court dated December 23, 2011 ruling in favor of HRH Construction LLC ("HRH") and Curtis Partition Corporation ("Curtis"). For the reasons stated below, the Order of the Bankruptcy Court is AFFIRMED in part and VACATED in part.

### I. Introduction

This Opinion assumes familiarity with the Parties and facts summarized in the Bankruptcy Court's Memorandum Decision and Order (Aug. 2, 2011) and Order and Judgment (Dec. 23, 2011). The below facts are taken from the Bankruptcy Court's August 2, 2011 Memorandum Decision and Order ("Order").

The present action arises out of a construction contract dispute between NYU, HRH, and HRH's subcontractor Curtis. NYU hired HRH to renovate NYU's radiology center in Manhattan pursuant to a contract dated October 21, 2003 ("Contract"). (Order at 2.) The renovation project proceeded in several phases to allow NYU to remain operational during construction. (Id. at 2–3.) Pursuant to the Contract and relevant subcontracts, payment was to proceed as follows: HRH was required to submit requisitions to NYU on

a monthly basis for periodic reimbursement of costs and expenses. (*Id.* at 3.) NYU was required to approve or disapprove of requisitions within twelve business days of receipt. (*Id.*) If NYU disapproved a requisition, the Contract required NYU to "prepare and promptly" issue a written statement to HRH describing the items that were not approved. (*Id.*) If NYU approved a requisition, NYU was required to pay HRH within thirty days of approval. (*Id.*) HRH was required to pay any relevant subcontractors, such as Curtis, within ninety-days of NYU's approval of a requisition. (*Id.* at 3–4.)

The construction project encountered delays in 2004 and early 2005, and NYU failed to remit payments to HRH in a timely manner. (*Id.* at 4.) NYU and HRH consequently signed an addendum to the Contract in May of 2005 in an effort to move the project forward and address the unpaid requisitions ("Completion Agreement"). (*Id.* at 4–5.) Pursuant to the Completion Agreement, NYU promised to render payment for four outstanding requisitions, and HRH promised to achieve "Substantial Completion" of Phases 0 and 1 of the project by June 15, 2005. (*Id.* at 5.) The Completion Agreement defines "Substantial Completion" to include "all [w]ork necessary to obtain New York State Department of Health ('DOH') approval for full use and occupancy of the Phase 0 and Phase 1 areas...." (*Id.* at 56.) The DOH inspected the premises on June 21, 2005, and NYU passed. (*Id.* at 6.)

Pursuant to the Completion Agreement, after Substantial Completion of Phases 0 and 1, NYU and HRH were to "meet (prior to the start of the next phase of the Work) to negotiate and resolve remaining issues between them, including the schedule for completion of the remaining Work." (*Id.*)

The Parties agreed that little work was done on the project after Substantial Completion of Phases 0 and 1. (*Id.*) HRH requested a meeting with NYU, however no meeting was held. (*Id.* at 7.) In response to a "suggestion" by NYU that HRH "submit something ... to the hospital which identifies what the issues are," HRH submitted a change order request regarding certain cost adjustments. (*Id.* 7–8.) NYU rejected the change order request and contacted another general contractor, Bovis Lend Lease LMB, Inc. ("Bovis") to have Bovis replace HRH. (*Id.* at 8.) NYU also gave Bovis permission to contact HRH's subcontractors, and the Bankruptcy Court found that the evidence demonstrated that Bovis' communications with HRH's subcontractors impeded HRH's ability to proceed. (*Id.*)

NYU claims that HRH breached the Contract by failing to proceed with Phase 2 of the project. (*Id.* at 2.) HRH countered that NYU prevented HRH from fulfilling its contractual obligations because NYU failed to meet with HRH to negotiate outstanding issues and finalize a plan for Phase 2 of the project. (*Id.*) HRH also argued that NYU breached the Contract by failing to make required payments on approved requisitions. (*Id.*) Subcontractor Curtis filed claims seeking to foreclose on a mechanic's lien against NYU and HRH for unpaid requisitions, and seeking damages against HRH for "hardship" or tortious interference. (*Id.* at 11.)

A trial was held on January 5–7, and 10, 2011 before the Bankruptcy Court. (*Id.* at 2.) The Bankruptcy Court ruled in favor of HRH and granted Curtis's trust fund claims in connection with Requisitions 14–16. (*Id.* at 32.) Specifically, the Bankruptcy Court awarded damages to HRH with respect to requisitions 14–16, in the amounts of $684,889.00, $800,874.00, and $486,194.00, less amounts that the Bank-

ruptcy Court ordered NYU to pay directly to Curtis and amounts requested by subcontractors who were subsequently paid for returning to the project pursuant to later agreements with replacement contractor Bovis. (*Id.*) The Bankruptcy Court ordered NYU to pay Curtis directly for requisitions 14–16, in the amounts of $77,867.00, $18,000.00, and $180,352.00 respectively. (*Id.*) The Bankruptcy Court denied claims for all other causes of action. (*Id.*) NYU timely appealed.

## II. *Standard of Review*

The Parties consented to entry of final judgment by the Bankruptcy Court. (Order and Judgment at 1 (Dec. 23, 2011).) This Court accordingly has jurisdiction over the appeal of the final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court's findings of fact must not be set aside unless they are "clearly erroneous," and the "reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." (Fed. R. Bankr. P. 7052.) A finding of fact is clearly erroneous if the Court is "left with the definite and firm conviction that a mistake has been committed." (*In re Adelphia Commc'ns Corp.*, 367 B.R. 84, 90 (S.D.N.Y. 2007) (citing *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948))).)

■ The Bankruptcy Court's conclusions of law, on the other hand, are reviewed *de novo.* (*Id.* at 90–91 (citing *In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir.2003)).) "The Court may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below." (*Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y.2010); *see also In re Dana*

*Corp.*, 412 B.R. 53, 56 (S.D.N.Y.2008) (citation omitted).) The District Court may not, however, consider evidence outside of the record. (*Morse v. Rescap Borrower Claims Trust*, No. 1:14–cv–5800–GHW, 2015 WL 353931, at *3 (S.D.N.Y. Jan. 26, 2015) (citation omitted).) The Parties agree that New York law governs the instant dispute.

## III. *Discussion*

### A. *HRH's Breach*

■ The Bankruptcy Court held that NYU failed to establish that HRH refused to proceed with Phase 2 or abandoned the project. (Order at 15–21.) NYU argued on appeal that "HRH performed no substantial work on the Project after June 2005 ... effectively abandoning the Project." (Brief of Plaintiff/Appellant NYU Hospitals Center at 6.) "Whether a contract has been abandoned is a question of fact, and cannot be disturbed on appeal from a bench trial unless clearly erroneous." (*Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.*, 946 F.2d 1003, 1008 (2d Cir.1991) (citation omitted) (applying New York law).) Abandonment of a contract requires demonstrating that the "contractee causes delays which are 'so great or so unreasonable that they may fairly be deemed equivalent to [its] abandonment of the contract.'" (*Corinno Civetta Constr. Corp. v. City of New York*, 67 N.Y.2d 297, 502 N.Y.S.2d 681, 493 N.E.2d 905, 912 (1986) (citation omitted). Delays must be so unreasonable that they "connote a relinquishment of the contract by the contractee *with the intention of never resuming it.*" (*Id.* (citation omitted) (emphasis added).)

The Bankruptcy Court made factual findings about HRH's demonstrated intention to proceed with the project. For example, HRH wrote to NYU in July of 2005 explaining that HRH "would like to pro-

ceed with Phase 2." (Order at 7 (citing Trial Exs. 132, 236).) In that same letter, HRH identified three items to be addressed, such as scheduling a meeting with three major contractors to review their potential additional costs on the project and requesting additional storage space. (Trial Ex. 132.) The Bankruptcy Court found credible evidence that NYU did not respond to HRH's letter. (*See, e.g.,* Order at 7; *see also* Trial Tr. 166:13–167:15, 170:11–14, 172:13–173:13 (Jan. 5, 2011).)

The Bankruptcy Court also found that, "around this time," NYU "suggested" to HRH to submit in writing something that "identifies what the issues are." (Order at 7–8 (quoting Egeberg Dep. 212:3–16, 212:3–16, 240:15–241:11).) In response, HRH submitted a change order requesting cost adjustments for the remainder of the project. (*Id.* at 7–8 (citing Trial Ex. 238).) NYU denied the change order request and notified HRH on August 17, 2005 that NYU considered HRH to be in default because of continued lack of progress. (Order at 8–9 (citing Trial Exs. 36, 38).) HRH subsequently notified NYU on August 22, 2005 that HRH would suspend performance on the project within ten days if NYU did not cure its default relating to payment under the Contract. (Trial Ex. 37; *see also* Order at 9.) There is evidence, however, that the Parties subsequently continued to work together in some capacity to move the project forward. For example, on August 30, 2005, HRH sent NYU meeting minutes from an August 24, 2005 meeting between HRH and NYU regarding the project. (Trial Ex. 244.) The Meeting Minutes provide for, *inter alia,* subsequent meetings and promises regarding performance of certain activities in late August and September. (*See id.* at § 80.2 ("8/24/05: John DeCesare/NYU requested that Precision attend next Wednesday's meeting (8/31/05) to discuss the signage. *Post Meeting Note:*

*Darrin Portnoy/Precision will attend."*), § 81.3 ("8/24/05: John DeCesare/NYU inquired about the delivery [date for glass in the Rooms T–290 and T–201]. HRH to follow-up with JEM. *Post Meeting Note: Delivery promised by week of 9/12/05."*), § 82.1 ("8/24/05: John DeCesare/NYU inquired about the status of the painting. K. Moses/HRH stated that the painting is 98% complete. *Post Meeting Note: Painting is now 100% complete."*).) Certain entries also state that HRH's subcontractors were delaying because they were contacted by another General Contractor about the project. (*See, e.g., id.* § 83.3 ("8/24/05: K. Moses/HRH stated that contractor will not confirm a delivery date [for storage cabinet in Room 261] because they have been contacted by another General Contractor about the project.").)

These factual findings are not clearly erroneous. The facts demonstrate that HRH attempted to continue to perform its obligations under the Contract post Substantial Completion of Phases 0 and 1. Further, as discussed below, the facts demonstrate that HRH would have a defense to any alleged breach because NYU frustrated HRH's ability to perform under the Contract. Accordingly, the Court finds that the Bankruptcy Court properly denied NYU's claim that HRH failed to proceed with Phase 2.

### B. *NYU's Breach*

■ The Bankruptcy Court found that NYU affirmatively obstructed HRH's performance when NYU (1) contacted a different general contractor, Bovis, about replacing HRH and granted Bovis permission to communicate directly with HRH's subcontractors; (2) failed to pay outstanding requisitions; and (3) failed to finalize drawings for Phase 2. (Order at 19.) NYU argued on appeal that the Bankruptcy Court erred in finding that

NYU affirmatively frustrated HRH's ability to perform. (Brief of Plaintiff/Appellant NYU Hospitals Center at 23–30.)

The Bankruptcy Court relied on, among other cases, *Plainview S. & S. Concrete Co. v. NVNG Development Corp.*, 151 A.D.2d 654, 542 N.Y.S.2d 714, 715 (N.Y.App.Div. 2d Dep't 1989) to determine that NYU frustrated HRH's ability to perform. (Order at 20.) The Court in *Plainview* affirmed a judgment for the plaintiff contractor on facts similar to those here. Specifically, the Court in *Plainview* stated:

> The plaintiff left the job site because the preparatory work, for which the defendant was responsible, had not yet been completed, thereby causing the plaintiff to be unable to continue working at that time. Under these circumstances, the defendant cannot successfully assert that the plaintiff, in leaving the work site and taking its materials so that they would not be unlawfully used by other contractors, abandoned its obligations under the contract.

> Similarly unpersuasive is the defendant's contention that it did not breach the contract because it never ordered the plaintiff off the project site or fired the plaintiff. While the plaintiff was waiting for the preparatory work to be performed so that it could return to the site, the defendant hired other contractors to perform the work which the plaintiff was obligated to perform pursuant to the contract. In doing so, the defendant breached the contract by preventing the plaintiff from performing.

(*Id.* (citations omitted); *see also Roswell Capital Partners LLC v. Alternative Construct. Techs.*, 638 F.Supp.2d 360, 369 (S.D.N.Y.2009) ("The frustration of performance defense is based on the rule that '[i]n the case of every contract there is an implied undertaking on the part of each party that he or she will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his or her part.'") (citation omitted); *WPA/Partners LLC v. Port Imperial Ferry Corp.*, 307 A.D.2d 234, 763 N.Y.S.2d 266, 269 (N.Y.App.Div. 1st Dep't 2003) (highlighting "the general proposition that one who frustrates another's performance may not hold the frustrated party in breach of contract").)

The Bankruptcy Court held that credible evidence presented at trial established that:

> First, HRH contacted general contractor Bovis about replacing HRH on the job and gave Bovis permission to communicate directly with HRH's subcontractors, thereby frustrating HRH's ability to work with subcontractors who expected that HRH had been or likely would be replaced. Second, NYU failed to timely pay outstanding requisitions, especially requisitions 14 and 15 due in June and July respectively, further frustrating HRH's ability to obtain cooperation from these same unpaid subcontractors....

(Order at 19.) The Record demonstrates that NYU contacted another general contractor, Bovis, by letter on August 3, 2005 "confirm[ing] the intent" of NYU to have Bovis present terms under which Bovis could complete the remaining phases of the project. (Trial Ex. 134.) In this letter, NYU stated that "Bovis may contact existing Radiology subcontractors to ascertain interest in having their existing subcontract assigned to Bovis understanding the probable termination of HRH Construction Company." (*Id.*) Notably, the email enclosing the letter and the letter itself suggest that discussions between NYU and Bovis commenced prior to August 3, 2005. Specifically, the letter serves to "confirm" NYU's intent to work with Bovis. (*Id.*) Additionally, the email is

written in colloquial terms and references the specific project name without describing the underlying project. (*See id.* ("Attached is a letter regarding Tisch 2 Radiology Renovation. Hard copy to follow.").) Testimony of NYU's own witness further demonstrates that NYU had contacted Bovis prior to writing the August 3, 2005 letter. NYU's facilities manager testified at his deposition[1] that "Les Craig [of Bovis] was hesitant in contacting the contractors so I wrote to [Craig of Bovis] and gave him—I don't know whether he needed permission but I gave him or I encouraged him to talk to these contractors." (Egeberg Dep. 278:13–16.) This is credible evidence that establishes that NYU encouraged Bovis to contact HRH's subcontractors even before NYU wrote the August 3, 2005 letter.

The Bankruptcy Court also found credible evidence that Bovis' communications with HRH's subcontractors impeded HRH's ability to perform. (Order at 8; *see also* Trial Ex. 244 (HRH meeting minutes) § 88.2 ("*8/17/05:* John DeCesare/NYU inquired as to when Curtis Partition and the other trades will be returning to the job. *8/24/05:* K. Moses/HRH stated that contractors will not return because they have been contacted by another General Contractor about the project.").)

Further, the Bankruptcy Court found that NYU frustrated HRH's ability to perform because NYU failed to remit payment for approved requisitions in a timely manner. Specifically, the Bankruptcy Court found that this delay in remitting payment "led unpaid subcontractors to neglect their duties." (Order at 4 (citing Trial Tr. 111:22–112:5 (Jan. 5, 2011); Fox Aff. ¶¶ 21–23; Trial Exs. 216, 217, 220, 221; Egeberg Dep. 158:24–159:25 (May

14, 2007)); *see also id.* at 19 ("NYU failed to timely pay outstanding requisitions ... frustrating HRH's ability to obtain cooperation from these same unpaid subcontractors.").) The importance of timely payment is underscored throughout the Contract. (*See, e.g.,* Trial Ex. 1 (Contract) ¶ 13.1 (providing that HRH has no right to suspend performance *"provided that* [NYU] continues to make payments of undisputed amounts") (emphasis added).)

These factual findings are not clearly erroneous. The Bankruptcy Court found that NYU's actions prevented HRH from performing when NYU (1) contacted Bovis and granted Bovis permission to contact the subcontractors regarding assignment of their subcontracts; and (2) failed to remit payments to HRH in a timely manner, which prevented HRH form paying subcontractors. NYU interfered with HRH's ability to perform, and thus NYU may not now hold HRH in breach. (*See, e.g., Plainview,* 542 N.Y.S.2d at 715). Accordingly, the Bankruptcy Court's finding that NYU breached is affirmed.

### C. *HRH's Damages*

■ HRH sought damages for Requisitions 14–17 for work completed through July of 2005. (*See, e.g.,* Trial Tr. 34:2–5 (Jan. 7, 2011).) The Bankruptcy Court awarded HRH damages only for Requisitions 14–16 because Requisition 17 was disputed by NYU. (Order at 14, 31–32.) HRH does not object to the Bankruptcy Court's award of damages for only Requisitions 14–16. (*See* Brief of Defendant/Appellee HRH Construction, LLC at 3 ("This Court should affirm the rulings of the Bankruptcy Court because its factual rulings were amply supported by the evidence before it, and because its legal con-

---

**1.** Mr. Egeberg did not appear at trial, but the Parties stipulated to use of his deposition testimony in lieu of live testimony at trial. (Order at 4 n. 5.)

clusions were the direct result of those correct factual determinations.").)

The Bankruptcy Court found that Section 17.4 of the Contract governs damages in this case, which is applicable when NYU terminates the Contract for convenience and without cause. (Order at 31.) This Section provides that "[i]n the case of such termination or deletion, the Contractor shall be entitled to be reimbursed by the Owner for Costs of the Work properly due and owing to the Contractor under the terms of this Agreement for Work performed up to and including the date of such termination or deletion...." (*Id.* (quoting Trial Ex. 1 (Contract) § 17.4).) NYU did not appeal the Bankruptcy Court's damages calculation.[2]

The Bankruptcy Court properly awarded damages under Section 17.4 of the Contract. As discussed earlier in this Opinion, NYU breached and terminated the Contract when it, *inter alia*, frustrated HRH's ability to perform by contacting a replacement General Contractor and encouraging the replacement to contact HRH's subcontractors. Pursuant to Section 17.4, HRH is entitled to "Costs of the Work properly due and owing to the Contractor under the terms of [the Contract] for Work performed up to and including the date of such termination or deletion." The Bankruptcy Court properly found that HRH is owed monies for Requisitions 14–16. Accordingly, HRH is entitled to monies owed under Requisitions 14–16, for work completed in connection with those Requisitions and which have been approved by NYU, less any payments already made by NYU in connection with those Requisitions.

### D. *Curtis' Damages*

The Bankruptcy Court held that Curtis is entitled to payment for Requisitions 14–16 from NYU for money owed to Curtis as approved by NYU. (Order at 29.) The Bankruptcy Court also denied Curtis's request to foreclose on the mechanic's lien. (*Id.* at 27.) No Party has appealed the Bankruptcy Court's decision to deny foreclosure on the lien. Instead, NYU correctly argued that Curtis may not recover directly from NYU.

The Bankruptcy Court held that NYU holds money owed to Curtis under Requisitions 14–16 in trust pursuant to Article 3–A of the New York Lien Law (N.Y. Lien Law §§ 70 to 79–a). (Order at 28–29.) Article 3–A, however applies to, as relevant here, "*funds ... received* by an owner for or in connection with an improvement of real property...." (N.Y. Lien Law § 70 (emphasis added).) The provisions of Article 3–A of the Lien Law "were intended to insure that funds obtained for financing of an improvement of real property and moneys earned in the performance of a contract for either a privately owned improvement or a public improvement will in fact be used to pay the costs of that improvement." *Canron Corp. v. City of New York*, 89 N.Y.2d 147, 153–54, 652 N.Y.S.2d 211, 674 N.E.2d 1117 (N.Y. 1996) (analyzing insurance proceeds received to repair cranes damaged during a storm which were improperly used by the contractor to pay rent arrears instead of paying sub-contractors who completed repairs of the cranes) (citations omitted).)

" '[T]rust funds' [for purposes of Article 3–A] are not simply any monies in the possession of an owner, contractor or subcontractor, but are funds actually received by an owner, a contractor, or a subcontrac-

---

**2.** NYU argued instead that the Bankruptcy Court erred in finding that NYU breached the Contract; NYU asserted on appeal that it is entitled to its completion costs. (*See, e.g.,* Brief of Plaintiff/Appellant NYU Hospitals Center at 14–32.)

tor in a manner specified in the Lien Law." (*Dick's Concrete Co. v. K. Hovnanian at Monroe II, Inc.*, 20 Misc.3d 1145, 873 N.Y.S.2d 233, 2008 N.Y. Slip Op. 51886(U) at *2 (Sup.Ct. N.Y.2008).) "[T]he Lien Law establishes that *designated funds* received by owners, contractors and subcontractors in connection with improvements of real property are trust assets...." (*Aspro Mech. Contracting, Inc. v. Fleet Bank, N.A.*, 1 N.Y.3d 324, 773 N.Y.S.2d 735, 737, 805 N.E.2d 1037 (2004) (emphasis added).) Paragraph (5) of Section 70 of the New York Lien Law identifies designated trust assets of which the owner is trustee.[3]

None of the situations described in paragraph (5) are found here. For example, no Party contends that NYU *received funds* which would be designated as trust funds pursuant to Article 3–A of the New York Lien Law. It was error to hold that money NYU owes to HRH for requisitions 14–16 are trust assets for the benefit of Curtis over which NYU is a trustee. Curtis may properly seek to recover from HRH monies due to Curtis for work performed in connection with Requisitions 14–16. Ac-

cordingly, the judgment of the Bankruptcy Court is affirmed to the extent that it held that Curtis is entitled to payment for work completed under Requisitions 14–16. However, the judgment of the Bankruptcy Court is vacated to the extent that it held that certain sums NYU must pay to HRH are trust assets over which NYU is a trustee for the benefit of Curtis pursuant to Article 3–A of the New York Lien Law.

### E. NYU's Claims Against Curtis

The Bankruptcy Court denied NYU's claim against Curtis for willful exaggeration of the mechanic's lien. (Order at 27 n. 15.) NYU argued that the Bankruptcy Court, erred in denying NYU's claim against Curtis for willful exaggeration of the mechanic's lien because Curtis accounted for damages not properly included in a mechanic's lien. (Brief of Plaintiff/Appellant NYU Hospitals Center at 36–40.)

■ New York's Lien Law provides that any person whose lien is declared to be void on account of willful exaggeration shall be liable in damages to the owner or contractor. (N.Y. Lien Law § 39–a.) A

---

**3.** The assets of the trust of which the owner is trustee are funds received by him and his rights of action for payment thereof
(a) under a building loan contract;
(b) under a building loan mortgage or a home improvement loan;
(c) under a mortgage recorded subsequent to the commencement of the improvement and before the expiration of four months after completion of the improvement;
(d) as consideration for a conveyance recorded subsequent to the commencement of the improvement and before the expiration of four months after the completion thereof;
(e) as consideration for, or advances secured by, an assignment of rents due or to become due under an existing or future lease or tenancy of the premises that are the subject of the improvement, or of any part of such premises, if the assignment is executed subsequent to the commencement of the improvement and before the expira-

tion of four months after the completion of the improvement or if it is executed before the commencement of the improvement and an express promise to make an improvement, or an express representation that an improvement will be made, is contained in the assignment or given in the transaction in which the assignment is made;
(f) as proceeds of any insurance payable because of the destruction of the improvement or its removal by fire or other casualty, except that the amount thereof required to reimburse the owner for premiums paid by him out of funds other than trust funds shall not be deemed part of the trust assets;
(g) under an executory contract for the sale of real property and the improvement thereof by the construction of a building thereon.
(N.Y. Lien Law § 70(5).)

finding of willful exaggeration requires "proof that the lienor deliberately and intentionally exaggerated the lien amount." (*Barden & Robeson Corp. v. Czyz*, 245 A.D.2d 599, 665 N.Y.S.2d 442, 443 (Sup.Ct. App.Div. 3d Dep't 1997).) "The fact that a lien may contain improper charges does not, in and of itself, establish that a plaintiff willfully exaggerated a lien." (*Minelli Constr. Co. v. Arben Corp.*, 1 A.D.3d 580, 768 N.Y.S.2d 227, 228 (Sup.Ct.App.Div. 2d Dep't 2003) (citation omitted).) A lien may be deemed willfully exaggerated when the lienor files a lien in connection with rights it has already waived. (*See, e.g., Westbury S & S Concrete, Inc. v. Manshul Constr. Corp.*, 212 A.D.2d 596, 622 N.Y.S.2d 584, 585 (Sup.Ct.App. Div. 2d Dep't 1995).)

■ Here, the Bankruptcy Court found that the evidence falls short of establishing deliberate and intentional exaggeration. (Order at 27 n. 15.) The Record on appeal does not support a finding that the Bankruptcy Court's holding was in error. NYU argued that Curtis improperly included in its lien calculation lien claims that Curtis had already waived. (Brief of Plaintiff/Appellant NYU Hospitals Center at 37–39.) Specifically, NYU argues that the lien improperly includes hardship and delay claims arising out of the period covered by the waiver. (*Id.* at 39.) However, the Court is unable to find, and NYU fails to demonstrate, conclusive evidence that the lien improperly contains amounts for claims already waived. The evidence to which NYU cites demonstrates that Curtis excluded from its hardship claim amounts already received under the contract. (Trial Ex. 146 (excluding amounts "paid to date" in the sum of $240,251.00.) The lien waiver also excludes the almost identical amount received under the contract. (Trial Ex. 46 (listing the "total payments received," after incorporating monies received in consideration of the waiver, as $240,250.70).) This evidence does not establish that the lien or hardship claim improperly accounts for monies already received.

Further, NYU has not presented coherent arguments or evidence that demonstrate that the amounts identified in the lien account for claims previously waived rather than claims related to Requisitions 14 and higher. While the documents NYU referenced are potentially ambiguous, NYU has failed to meet its burden to show that the Bankruptcy Court's factual and credibility determinations regarding the calculation of the lien, and whether Curtis willfully exaggerated it, are clearly erroneous. NYU's claim against Curtis for willful exaggeration of the lien is properly denied.

The Bankruptcy Court also denied NYU's indemnification claim against Curtis. (Order at 29–31.) NYU argued on appeal that the Bankruptcy Court erred in so ruling. NYU cites an indemnity provision in the Curtis Subcontract to support its argument that Curtis must indemnify NYU for damages arising from any breach on the part of Curtis.[4]

---

**4.** The covenant provides in relevant part:

The Trade Contractor shall, to the fullest extent permitted by law and at its own cost and expense, indemnify and defend . . . the Owner . . . and save [it] harmless from and against any and all claims, damages, losses, liabilities, suits, judgments, actions and all expenses (including attorneys fees' [sic] and disbursements) arising out of any act, error or omission or breach of Contract or infringement of any patent right by the Trade Contractor or any of its subTrade Contractors or suppliers of any tier in connection with the performance of the Work hereunder or otherwise arising out of, in connection with or as a consequence of the performance of the Work hereunder. The foregoing indemnity shall not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity

■ A party may not bring common law indemnification claims when it is in breach of contract and not merely vicariously liable for the fault of another. (*Richards Plumbing & Heating Co. v. Washington Grp. Int'l, Inc.*, 59 A.D.3d 311, 874 N.Y.S.2d 410, 411 (Sup.Ct.App.Div. 1st Dep't 2009) ("The court properly dismissed the construction manager's third-party claim for common-law indemnification since plaintiff's claims and the owner's cross claims allege breach of contract by the construction manager, not vicarious liability attributed solely to the fault of the architect.") (citation omitted); *Gap, Inc. v. Fisher Dev., Inc.*, 27 A.D.3d 209, 810 N.Y.S.2d 456, 459 (Sup.Ct.App.Div. 1st Dep't 2006) ("A party sued solely for its own alleged wrongdoing, rather than on a theory of vicarious liability, cannot assert a claim for common law indemnification.") (citation omitted); *cf. T. Lemme Mech., Inc. v. Schalmont Cent. Sch. Dist.*, 52 A.D.3d 1006, 860 N.Y.S.2d 241, 243 (Sup. Ct.App.Div. 3d Dep't 2008) ("Here, the district's third-party complaint alleged that Bast Hatfield breached the parties' contract and that such breach delayed the work of other contractors and subcontractors such as plaintiff, causing them damages, and resulted in legal action being commenced against the district. These facts, if true, give rise to the district's cause of action for common-law indemnification against Bast Hatfield.").)

Here, the Court has found that NYU is in breach. As such, NYU may not seek indemnification from Curtis for monies expended as a result of NYU's breach. Accordingly, the Bankruptcy Court properly denied NYU's claims against Curtis for indemnification.

■ The Bankruptcy Court also denied NYU's claim for recovery from Curtis as a third-party beneficiary for Curtis's breach of the Subcontract between Curtis and HRH. (Order at 29–31.) NYU argued on appeal that the Bankruptcy Court erred because NYU is a third-party beneficiary and entitled to completion costs with respect to the scope of Curtis's work on the project. (Brief of Plaintiff/Appellant NYU Hospitals Center at 33–36.)

■ Assuming that NYU is a third-party beneficiary, under New York law, a third-party beneficiary is subject to all of the same defenses as the promisee. (*See, e.g., BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir.1993); *Wu v. Pearson Edu., Inc.*, No. 09 Civ. 6557, 2010 WL 3791676, at *6 (S.D.N.Y. Sept. 29, 2010) (stating that third-party beneficiary possesses "no greater right to enforce a contract than the actual parties to the contract").) NYU bears the burden of establishing that Curtis breached the Subcontract between HRH and Curtis. (*See, e.g., BAII*, 985 F.2d at 697.)

Here, the Bankruptcy Court found that Curtis met its burden to demonstrate that it performed under the Subcontract. (Order at 29.) NYU on appeal offered mere conclusory arguments to refute this finding. (*See, e.g.,* Brief of Plaintiff/Appellant NYU Hospitals Center at 36 (arguing that NYU should recover and listing NYU's completion costs); Reply Brief of Plaintiff/Appellant NYU Hospitals Center at 20–25 (providing a mere half of a paragraph of factual assertions among NYU's

---

which would otherwise exist in favor of any Indemnitee hereunder. The foregoing indemnity shall include, without limitation, bodily injury and death of any employee of the Trade Contractor and shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable under any applicable workers compensation, disability benefits or other similar employee benefits acts.... (Trial Ex. 4, § 12.2.)

arguments why Curtis allegedly breached).) NYU's conclusory arguments are insufficient to satisfy NYU's burden that Curtis breached the HRH–Curtis Subcontract. Accordingly, the Bankruptcy Court properly denied NYU's third-party beneficiary claim against Curtis.

IV. *Conclusion*

The Court has considered all of the arguments raised by the Parties. To the extent not specifically addressed, they are either moot or without merit. Accordingly, the Order of the Bankruptcy Court is VACATED to the extent it held that NYU holds monies due to Curtis in trust, and AFFIRMED in all other respects.

SO ORDERED.