THE GAP, INC., Respondent, v FISHER DEVELOPMENT, INC., et al., Respondents, ALPHA MECHANICAL CORP., Appellant, and FIREMAN's FUND INSURANCE COMPANY, Intervenor-Respondent. [810 NYS2d 456]—

Judgment, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered March 12, 2004, after a jury trial, awarding plaintiff the principal sum of $88,837.02 against defendant Alpha Mechanical Corp. and awarding defendant Kaback Enterprises judgment against Alpha for common-law indemnification, unanimously modified, on the law and the facts, to vacate award of common-law indemnification, and otherwise affirmed, without costs.

Plaintiff The Gap, Inc. operates the Old Navy store at 18th Street and Sixth Avenue. Defendant Fisher Development, Inc. entered into a contract with The Gap to serve as general contractor for new construction and remodeling work for The Gap's chain of stores, including the Old Navy store in question. Defendant Kaback Enterprises was Fisher's subcontractor for HVAC system and hot water pipe construction. Defendant Alpha Mechanical Corp. supplied Kaback with the hot water piping and installed it, pursuant to a one-page purchase order indicating piping to be shipped to "The Gap" at the Old Navy store on Sixth Avenue and installed "as per plans and specs."

On March 1, 1996, a leak at the store caused substantial property damage. The Gap then sued Fisher, Kaback and Alpha on theories of negligence and breach of contract.

At trial it was established that the leak was caused by the fracture of a corroded drain valve cap, which was made of zinc aluminum alloy rather than from brass as required by the plans and specifications. Robert S. Vecchio, The Gap's expert metallurgical engineer, testified that he had analyzed the cap that Alpha had installed on the drain valve, which was the source of the leak. The cap did not burst off, because its inner threads holding it to the pipe were still in good condition. Rather, it had thinned out and corroded from the hot water because it was made of zinc aluminum alloy instead of brass. He testified that brass and bronze alloys are acceptable for use in plumbing systems, but zinc aluminum alloys are not supposed to be used in contact with hot water. However, he acknowledged that the composition of the cap could not be discerned upon mere observation.

Michael Holland, Alpha's field director, also testified that the cap should have been brass or bronze, and that anything else would not be good practice. Indeed, Alpha's specifications for the drain valve and cap provided that the cap be made of brass.

Holland maintained that he had ordered brass caps; however, he did not have copies of the orders, receipts or specifications. When the order came in, the foreman at the site was responsible for checking the caps to see they were brass, and met the specifications, but Holland was not sure whether that was done in this instance. He had not told the supplier that the order was for a pressure hot water system, and conceded that sometimes it would send substandard materials.

At the close of the trial, the jury found Alpha not negligent, but found that it had breached its contract with Kaback, which breach was a proximate cause of the damage. As to Kaback, the jury found that it was negligent, but that its negligence was not a proximate cause of the damages; however, Kaback was found to have breached its contract with Fisher, which breach was a proximate cause of the damage. As to Fisher, the jury found it not negligent, but found that it had breached its contract with The Gap and that such breach was a proximate cause of the damage. The Gap was awarded approximately $89,000 in damages.

The trial court denied Alpha's posttrial motion to set aside the verdict, but granted the cross motions of The Gap and codefendants Kaback and Fisher to set aside the verdict insofar as it held that Alpha was not negligent, and granted a directed verdict against Alpha on the negligence cause of action, and a pass-through of liability from The Gap directly to Alpha.

The trial court properly upheld the verdict with regard to the contract causes of action. The Gap's claims were not time-barred, inasmuch as the jury found that the action was commenced within three years of completion of the work, which finding was supported by the testimony of Kaback's on-site supervisor on the date of the leak, who testified that while Alpha's work was complete for "billing purposes" as of April 14, 1995, in his view the job was not complete until December 1995, when hot water first became available.

The contract claims were properly established through the contracts, purchase order and testimony, including testimony that Alpha was fully aware that the work it was doing was for The Gap. The evidence fully supported the finding that Alpha failed to use the proper type of valve cap and that Alpha's foreman was supposed to check that it was brass but failed to do so, and that the leak was caused by the installation of a cap made of an inappropriate alloy.

However, the trial court erred in setting aside the jury's determination that Alpha, although it had breached its contract, was not negligent. The court's view as to the weight of the evi-

dence did not authorize directing a verdict in that regard. CPLR 4404 (a) authorizes a court to set aside a verdict and direct judgment only when there is no valid line of reasoning and permissible inferences which could possibly lead a rational jury to its conclusion on the basis of the evidence at trial (*see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). The factual finding by the jury that Alpha had breached its contractual obligations but was not negligent should have been allowed to stand, inasmuch as a valid line of reasoning permitted that conclusion based upon the evidence. For instance, the jury could have found that Alpha ordered brass valves and valve caps and, based upon the testimony of plaintiff's expert, that it reasonably concluded upon visual inspection that the products it had received comported with its order. The installation of the zinc aluminum alloy valve cap, although a clear breach of the contract's requirements, would not in such circumstances have been the result of Alpha's negligence.

Remaining unaffected, however, is the trial court's ruling that The Gap was a third-party beneficiary of the contract between Kaback and Alpha (*see Fourth Ocean Putnam Corp. v Interstate Wrecking Co.*, 66 NY2d 38, 44 [1985]). Consequently, despite the absence of a pass-through liability determination based upon negligence, we affirm the award of damages in favor of plaintiff against Alpha directly.

The trial court's conclusion that Kaback is entitled to common-law indemnification against Alpha must be vacated. "A party sued solely for its own alleged wrongdoing, rather than on a theory of vicarious liability, cannot assert a claim for common law indemnification" (*Mathis v Central Park Conservancy*, 251 AD2d 171, 172 [1998]). Since each of the defendants was found to have breached its contract, and none was found to be negligent, Kaback is not entitled to common-law indemnification (*see Trump Vil. Section 3 v New York State Hous. Fin. Agency*, 307 AD2d 891, 895 [2003], *lv denied* 1 NY3d 504 [2003]).

We have examined Alpha's remaining arguments, including its challenge to the jury charge, the findings and the remainder of the determination of its posttrial motion, and find them to be without merit. Concur—Mazzarelli, J.P., Saxe, Sweeny, Catterson and Malone, JJ.