OPINION OF THE COURT
Lucy Billings, J.
I. Background
Plaintiff owns the fifth floor cooperative unit and, with her brothers, co-owns the second floor cooperative unit in a cooperative building of five stories at 31 Greene Street, New York County, which is zoned for residential use by families of an artist certified by the New York City Department of Cultural Affairs (DCA). (Multiple Dwelling Law §§ 275, 276.) Defendant CASSM Realty Corp. is the residential cooperative corporation that owns and operates the building. Defendant O’Neill owns the fourth floor cooperative unit, is not an artist, and is vice-president of CASSM Realty’s Board of Directors. Defendant Vassilakis owns the third floor cooperative unit and is the president and treasurer of CASSM Realty’s Board of Directors. Each floor is represented on the Board, so plaintiff and one of her brothers are also Board members.
In this action, plaintiff alleges six claims.
1. CASSM Realty has breached her proprietary lease, for which she seeks damages.
2. CASSM Realty has constructively evicted her from her unit, for which she seeks damages.
*259 3. All defendants have breached their fiduciary duties as the cooperative corporation and its Board members to her as a shareholder under the cooperative corporation’s bylaws and, in so doing, also have violated her proprietary lease, for which she seeks an injunction mandating defendants’ compliance with the bylaws and lease.
4. CASSM Realty and O’Neill have violated the building’s certificate of occupancy, the bylaws, proprietary leases, and other contractual obligations, by O’Neill’s ownership and occupancy of his unit when no one in his family in occupancy is an artist, for which she seeks an injunction mandating that he sell his unit to a person entitled to reside in the building.
5. Among the duties that defendants have breached alleged in plaintiff’s third claim is a duty to maintain the building roof beams and roof, yet plaintiff separately claims that defendants have breached their fiduciary duties under the bylaws by failing to maintain the roof beams and roof and, in so doing, also have violated her proprietary lease, for which she seeks damages.
6. All defendants, by failing to maintain common elements of the building, have violated Multiple Dwelling Law § 78, for which plaintiff seeks damages.
Defendants have moved for summary judgment dismissing plaintiffs second claim, which is against CASSM Realty only; her third, fifth, and sixth claims, insofar as they are against the two individual defendants, but not against CASSM Realty; and her fourth claim, insofar as it is against O’Neill, but not against CASSM Realty. (CPLR 3212 [b], [e].) Plaintiff has cross-moved for summary judgment on her claims seeking injunctive relief (CPLR 3212 [b]) and on defendants’ liability for her claims seeking damages. (CPLR 3212 [b], [e].)
II. Constructive Eviction
Defendants’ motion for summary judgment dismissing the second claim against CASSM Realty for plaintiff’s constructive eviction relies on Vassilakis’s affidavit. Vassilakis attests that either plaintiff or her subtenant occupied her unit continuously during the period she alleges constructive eviction and that, in any event, she is responsible for the condition of her unit, and no conditions in the building’s common areas prevented her use of those areas. While these allegations ignore plaintiff’s principal claim, that the condition of the common roof prevented the use of her unit, Vassilakis further insists that the *260 water leaks of which she complains resulted from her own failure to repair her skylight.
Finally, Vassilakis points out that the building did not receive maintenance payments from plaintiff for over two years, longer than any possible period of constructive eviction. Yet it is undisputed that plaintiff notified CASSM Realty of her claims concerning nonperformance of building maintenance duties and deposited her maintenance payments in an escrow account due to those claims: a remedy she was entitled to invoke even if she suffered only a partial eviction and even if she remained in possession. (Eastside Exhibition Corp. v 210 E. 86th St. Corp., 18 NY3d 617, 622 [2012].)
Plaintiff’s obligation to pay for maintenance is dependent on CASSM Realty’s “satisfactory maintenance” of the premises within its control in a habitable condition. (Matter of 12-14 E. 64th Owners Corp. v Hixon, 130 AD3d 425, 425-426 [1st Dept 2015]; see Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 427 [1979].) If and when the nonperformance of building maintenance constructively evicted her and she vacated all or part of her unit, the vacatur suspended her obligation to pay for maintenance proportionate to the abandoned space and entitles her to the proportionate maintenance payments in escrow. (Leventritt v 520 E. 86th St., 266 AD2d 45, 46 [1st Dept 1999]; 85 John St. Partnership v Kaye Ins. Assoc., 261 AD2d 104, 105 [1st Dept 1999].)
The warranty of habitability embodied in Real Property Law § 235-b, implied in plaintiff’s proprietary lease, and equally applicable to proprietary lessees and lessees of rental premises (12-14 E. 64th Owners Corp. v Hixon, 130 AD3d at 425-426; Granirer v Bakery, Inc., 54 AD3d 269, 271 [1st Dept 2008]), protects plaintiff against conditions that render the premises uninhabitable or prevent them from serving their intended function: here, “living-work quarters for artists.” (Multiple Dwelling Law § 275; see Solow v Wellner, 86 NY2d 582, 588-589 [1995].) Thus, as long as plaintiff vacated her unit due to a condition of the roof beams, the roof, or another common area or element of the building within CASSM Realty’s control that rendered her unit uninhabitable or unusable for its intended function as living-work quarters, she is entitled to damages. (225 E. 64th St., LLC v Janet H. Prystowsky, M.D. P.C., 96 AD3d 536, 537 [1st Dept 2012]; King v 870 Riverside Dr. Hous. Dev. Fund Corp., 74 AD3d 494, 495 [1st Dept 2010]; Granirer v Bakery, Inc., 54 AD3d at 270; see 12-14 E. 64th Owners Corp. v *261 Hixon, 130 AD3d at 425; Adler v Ogden CAP Props., 126 AD3d 544, 545 [1st Dept 2015]; Pacific Coast Silks, LLC v 247 Realty, LLC, 76 AD3d 167, 172 [1st Dept 2010].)
The warranty of habitability is independent of CASSM Realty’s expressed duties under its proprietary lease ¶¶ 6-8 with plaintiff (Real Property Law § 235-b [2]; Solow v Wellner, 86 NY2d at 589; Granirer v Bakery, Inc., 54 AD3d at 270), as well as its fiduciary duties under its bylaws, which specify the building conditions for which the cooperative is responsible and suspend maintenance payments when leased space is “untenantable.” (Aff of Maxi Cohen, July 18, 2013, exhibit D, ¶ 8.) Whatever the basis for CASSM Realty’s responsibility, plaintiff’s proceeding for repairs in New York City Civil Court, in awarding plaintiff an abatement of her maintenance payments for a specified period, already has determined the deficient conditions that have limited plaintiff’s use of her unit and of common areas, for which CASSM Realty is liable. (Reply aff of Carol A. Sigmond, Aug. 22, 2014, exhibit B.)
Consequently, the court denies defendants’ summary judgment dismissing plaintiff’s second claim and grants plaintiff summary judgment on CASSM Realty’s liability for her constructive eviction consistent with the Civil Court’s disposition. (CPLR 3212 [b], [e].) Those months when plaintiff was awarded a 100% abatement of her maintenance payments signal the period when the deficient conditions rendered her unit uninhabitable or entirely prevented them from serving their intended function as living-work quarters for an artist (Multiple Dwelling Law § 275; Solow v Wellner, 86 NY2d at 588-589), for which CASSM Realty is liable. Since she is entitled to the full measure of her damages from the conditions within CASSM Realty’s control that forced her to vacate her unit (Granirer v Bakery, Inc., 54 AD3d at 270), she is entitled to reasonable expenses for comparable alternative living-work quarters to the extent those reasonable expenses exceeded her maintenance payments had she not been constructively evicted. (E.g. Missionary Sisters of Sacred Heart v Meer, 131 AD2d 393, 397 [1st Dept 1987].) If alternative living-work quarters were available to her without a charge, then she is entitled to the difference between the reasonable rental value of her unit for the period she was constructively evicted and her maintenance payments had her unit been fully usable. (E.g. Sabor A. Mexico, Inc. v 76 S. St. Corp., 127 AD3d 952, 953 [2d Dept 2015]; Matter of Nostrand Gardens Co-Op v Howard, 221 AD2d 637, 638 [2d Dept 1995].)
*262 III. Individual Defendants’ Liability for Breach of Fiduciary, Contractual, and Statutory Duties as Corporate Officers
Defendants’ motion for summary judgment dismissing the third, fifth, and sixth claims only against the individual defendants relies on the absence of any allegations in the complaint beyond defendants’ unsatisfactory performance of their duties on the cooperative corporation’s behalf. The duties to convene shareholders’ meetings, elect officers, establish and collect the payments owed by the shareholders to maintain and improve the building, issue financial statements, and maintain the building adequately, free of hazards and nuisances, under the bylaws, plaintiff’s proprietary lease, and the Multiple Dwelling Law, are the corporation’s duties.
All plaintiff’s allegations concerning failures by Vassilakis and O’Neill to convene meetings, elect officers, collect the payments owed by the shareholders, maintain and improve the building, and issue financial statements relate to these individual defendants’ actions on behalf of CASSM Realty and its Board. (E.g. Weinreb v 37 Apts. Corp., 97 AD3d 54, 57 [1st Dept 2012].) Plaintiff has not alleged that Vassilakis or O’Neill, at least in his capacity as a corporate officer of CASSM Realty rather than a shareholder, engaged in self-dealing or otherwise acted in his own interest and against the corporation’s and its shareholders’ interests. Nor has plaintiff alleged any eviden-tiary facts indicating how Vassilakis or O’Neill, as a CASSM Realty Board member and officer, acted without the Board’s authority or other than on the corporation’s behalf or any particular conduct from which conflict of interest, bias, or discrimination may be inferred. (40 W. 67th St. v Pullman, 100 NY2d 147, 157 [2003]; Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 540 [1990]; Fletcher v Dakota, Inc., 99 AD3d 43, 48 [1st Dept 2012]; see Kassover v PVP-GCC Holdings II, LLC, 73 AD3d 626, 629 [1st Dept 2010].)
Although plaintiff’s third, fifth, and sixth claims do not allege that the Board acted outside the scope of duties contractually imposed on it, her third and fifth claims do allege that the Board, acting for CASSM Realty, breached those contractual duties. The claims do not specify, however, that Vassilakis or O’Neill breached any particular duty of his particular office, as opposed to participating in the breach by the Board as a whole (see Kassover v PVP-GCC Holdingco II, LLC, 73 AD3d at 628); engaged in conduct distinct from the Board’s actions (e.g. Berenger v 261 W. LLC, 93 AD3d 175, 185 [1st Dept 2012]); or *263 “breached a duty other than, and independent of, those contractually imposed upon the board.” (Fletcher v Dakota, Inc., 99 AD3d at 50, quoting Brasseur v Speranza, 21 AD3d 297, 298 [1st Dept 2005].) The sixth claim alleges a violation of Multiple Dwelling Law § 78 due to the failure to maintain common elements of the building, but the duty under this statute duplicates the contractual duties imposed on the Board.
The business judgment rule protects CASSM Realty and its Board, including its individual members, from liability for decisions within the scope of the Board’s authority, in furtherance of the corporation’s purposes, and in good faith. (Business Corporation Law § 717; 40 W. 67th St. v Pullman, 100 NY2d at 155; Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d at 537-538; Fletcher v Dakota, Inc., 99 AD3d at 48; Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium, 65 AD3d 985, 989 [1st Dept 2009]; see Weinreb v 37 Apts. Corp., 97 AD3d at 57; Berenger v 261 W. LLC, 93 AD3d at 184-185.) Decisions concerning the methods and extent of repairs or remediation in the building are within the Board’s authority and shielded from judicial review by the business judgment rule (Berenger v 261 W. LLC, 93 AD3d at 184-185), unless the decisions or other actions singled out plaintiff for harmful treatment. (Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d at 540; Kleinerman v 245 E. 87 Tenants Corp., 74 AD3d 448, 449 [1st Dept 2010]; Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium, 65 AD3d at 989; Louis & Anne Abrons Found. v 29 E. 64th St. Corp., 297 AD2d 258, 260-261 [1st Dept 2002].)
Plaintiff may hold Vassilakis or O’Neill jointly and severally liable with CASSM Realty for a breach of their fiduciary duties under the bylaws, particularly when it also violates a statutory mandate, here Multiple Dwelling Law § 78, if she demonstrates two sets of facts. First, Vassilakis or O’Neill directed, controlled, approved, or otherwise participated in intentional neglect of the building’s common elements, such as its roof beams and roof. Second, the intent of Vassilakis or O’Neill in purposefully neglecting the common elements was to inflict particular injury on plaintiff, who as the owner of the top floor unit was likely to be most adversely affected, for example, by neglect of the roof and common elements essential to the roofs maintenance. (Fletcher v Dakota, Inc., 99 AD3d at 49-50; Weinreb v 37 Apts. Corp., 97 AD3d at 57; Kleinerman v 245 E. 87 Tenants Corp., 74 AD3d at 449; see Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium, 65 AD3d at 989; Louis & Anne Abrons *264 Found. v 29 E. 64th St. Corp., 297 AD2d at 260-261.) As evidence of such an intent, plaintiff attests that “[defendant O’Neill has written nasty emails . . . calling me a liar and crazy” and that “he and Defendant Vassilakis have been rude and nasty to me.” (Aff of Maxi Cohen, ¶ 18, Aug. 7, 2014.) Therefore the court grants defendants summary judgment dismissing plaintiff’s third and fifth claims against the individual defendants, but denies defendants summary judgment dismissing plaintiff’s sixth claim against the individual defendants, and denies plaintiff summary judgment on their liability for her third, fifth, and sixth claims. (CPLR 3212 [b], [e].)
IV. CASSM Realty’s Liability for Breach of Fiduciary, Contractual, and Statutory Duties Based on Plaintiff’s Third, Fifth, and Sixth Claims
CASSM Realty does not dispute its duties as a cooperative corporation to its shareholders, which include plaintiff, under its bylaws and her proprietary lease. For CASSM Realty’s claimed breach of its duties under the bylaws and lease, plaintiff seeks (a) an injunction mandating its compliance with the bylaws and lease; (b) damages for breach of its duties to maintain the building roof beams and roof; and (c) damages for breach of its duties to maintain other common elements of the building, insofar as that breach violated Multiple Dwelling Law § 78.
A. The Applicable Bylaws
Plaintiff attests to her execution as the former secretary of CASSM Realty’s Board of Directors and the execution by the Board’s president and its three other members of a resolution dated July 21, 1980, adopting CASSM Realty’s bylaws annexed to her complaint as well as to her affidavit, the bylaws that CASSM Realty’s Board has relied on for decades since then. (People v Frye, 94 AD3d 589, 589 [1st Dept 2012]; People v Pierre, 41 AD3d 289, 291 [1st Dept 2007]; People v Bryant, 12 AD3d 1077, 1079 [4th Dept 2004]; People v Jean-Louis, 272 AD2d 626, 627 [2d Dept 2000].) Defendants object that the bylaws are themselves unsigned and undated and are incomplete, because they end after section 9.01, followed inexplicably by an incongruous page from a contract of sale or a proprietary lease. The bylaws do end, however, at the conclusion of a sentence, paragraph, and section providing for the bylaws’ adoption, amendment, or repeal, and not so “abruptly” *265 midstream as O’Neill and Vassilakis contend. (Aff in opp of Thomas O’Neill, ¶¶ 6, 7, July 14, 2014; aff in opp of Thanos Vassilakis, ¶¶ 6, 7, July 14, 2014.) Whether the explanation is that a stray page became inadvertently stapled to the bylaws adopted and used by laypersons unsophisticated in corporate governance documents, or the explanation is unknown, it does not undermine plaintiff’s authentication of the signed and dated resolution adopting these bylaws and explaining why they are not separately signed and dated.
Defendants rely only on the incompetent opinions by O’Neill and Vassilakis of the document’s authenticity, which is the factfinder’s determination once plaintiff has laid a foundation for its authenticity (e.g. Singer Asset Fin. Co., LLC v Melvin, 33 AD3d 355, 357-358 [1st Dept 2006]; Acevedo v Audubon Mgt., 280 AD2d 91, 95 [1st Dept 2001]; People v Bryant, 12 AD3d at 1079; Fields v S & W Realty Assoc., 301 AD2d 625 [2d Dept 2003]), and defendants present controverting evidence. O’Neill and Vassilakis have no personal knowledge of what the Board adopted in 1980 when they did not reside in the building, however, and present no contrary bylaws in effect during the period of defendants’ alleged violations and nonenforcement.
Defendants present only plans, specifications, and a purchasers’ agreement to form a corporation in 1980, retrieved from the New York City Department of Buildings, and new bylaws that the Board voted on in 2014, but that defendants readily admit were not adopted by the 80% majority required by the 1980 bylaws in effect until validly replaced. Therefore, absent controverting evidence of validly adopted alternative or replacement bylaws, the bylaws authenticated by plaintiff dictate defendants’ conduct and plaintiff’s corresponding rights.
B. The Injunctive Relief to be Adjudicated
Defendants do not dispute their duties to convene annual meetings; elect officers; establish and collect payments for maintenance and assessments needed to operate the cooperative and the building, late fees, and interest; maintain complete financial records for shareholders’ review; and maintain the building’s common elements, including its roof beams and roof.
Plaintiff’s proceeding for repairs in New York City Civil Court already has determined the deficient conditions of the building’s roof beams, roof, and other common elements for which CASSM Realty is liable, by ordering CASSM Realty to repair those deficient conditions. (Sigmond reply aff, Aug. 22, *266 2014, exhibit B.) That order resolves the injunctive relief sought mandating CASSM Realty’s compliance with its duties under its bylaws and plaintiff’s proprietary lease to maintain the building’s common elements.
Defendants do not deny their other duties, but simply insist that, at least since 2013, they have convened annual meetings, elected officers, and imposed financial assessments to pay arrears of real property taxes and higher cooperative and building operating expenses, including for heating oil. Defendants do not demonstrate that they have collected these assessments or payments for maintenance, however, or ever imposed or collected late fees or interest and in fact admit that not all shareholders have paid assessments or maintenance payments. Plaintiff and her brother specifically point to outstanding assessments of $30,000 plus outstanding maintenance payments owed by the owner of the first floor unit, despite his receipt of $10,000 per month in rent for the unit, none of which defendants deny.
Significantly, defendants completely ignore CASSM Realty’s alleged failure to maintain complete financial records of its income, expenses, accounts receivable, and debts for shareholders’ review. As a result, the precise and easily calculated information regarding which shareholders have paid assessments or maintenance payments and how much still is owed by whom remains unavailable to plaintiff. Her proprietary lease ¶ 9 requires CASSM Realty to provide her annual financial statements of income and expenses. She and her brother attest that they have received no such statements since 2006, during Vassilakis’s tenure as Board president, and that Vassilakis concealed fines assessed against the building and CASSM Realty’s nonpayment of real property taxes assessed against the building from 2009 to 2013. Defendants present no evidence to the contrary.
Bylaws § 2.11 requires 80% of CASSM Realty’s Board to approve its expenditures above $1,000. Plaintiff and her brother, her co-owner of the second floor unit and that unit’s representative on the Board, attest to regular violations of this requirement since 2006, during Vassilakis’s tenure as Board president, including when CASSM Realty has paid defendants’ attorney in this action. It well might be less cumbersome to allow regular payments of recurring expenses above $1,000, such as for taxes, heating oil, water, or insurance, without Board approval, but CASSM Realty must amend this requirement in *267 the 1980 bylaws by the 80% majority required by those bylaws § 9.01 to adopt an amendment. Moreover, if categories of expenses are recurring and of regular amounts, CASSM Realty may anticipate and obtain advance approval of these expenses. Instead, defendants simply point to the bylaws that the Board voted on in 2014, but did not adopt by the majority required by the 1980 bylaws, and that would eliminate Board approval for various categories of expenses.
Based on the undisputed evidence in support of plaintiff’s motion for summary judgment on her third claim, CASSM Realty, through the individual defendants in their capacities as officers of CASSM Realty, have financially mismanaged CASSM Realty insofar as they have failed to perform the following duties, in violation of plaintiff’s proprietary lease ¶ 9 and bylaws § 2.11. (CPLR 3212 [b], [e].) Consequently, plaintiff is entitled to an injunction requiring CASSM Realty, through its defendant officers to:
1. Provide plaintiff CASSM Realty’s annual financial statements of income and expenses, including itemized expenditures above $1,000 and the amount of her maintenance payments al-locable to real estate taxes, interest, and amortization of mortgage indebtedness, from 2006 to the present, and continuing annually by March 31 after the preceding year;
2. Maintain an accounting system that records CASSM Realty’s financial transactions completely and accurately and a financial record keeping system as required by plaintiff’s proprietary lease, which will enable plaintiff to review CASSM Realty’s complete financial records at any time;
3. Refrain from expenditures above $1,000, including payments to CASSM Realty’s attorney, absent approval by 80% of its Board or amendment of this requirement by the 80% majority required by the 1980 bylaws;
4. Refrain from any payments to the attorney for O’Neill or for Vassilakis; and
5. Impose on and collect from all shareholders financial assessments, maintenance payments, late fees, and interest to pay real property taxes, fines, and other assessments against the building timely and to pay cooperative and building operating expenses. (McCain v Koch, 70 NY2d 109, 118 [1987]; Likokas v 200 E. 36th St. Corp., 48 AD3d 245, 245 [1st Dept 2008].)
Upon this record, plaintiff has not established entitlement to summary judgment enjoining CASSM Realty and its defendant *268 officers to convene annual meetings or elect officers. (CPLR 3212 [b].) If plaintiff establishes at trial that CASSM Realty and the individual defendants, in their capacities as officers of CASSM Realty, have retreated to their former failure to perform their duties to convene meetings or elect officers of the cooperative according to its bylaws, then she may be entitled to further injunctive relief.
Plaintiff also seeks to void CASSM Realty’s past expenditures above $1,000 made without approval by 80% of its Board, but such relief would implicate the rights of nonparties who received those payments and who are not before the court. Nor does plaintiff seek any compensatory relief based on her claim for financial mismanagement, even though, once defendants provide her CASSM Realty’s financial statements with its itemized expenditures above $1,000 since 2011, they may disclose the extent to which maintenance payments or assessments collected from her have been applied to pay defendants’ attorney.
C. The Damages to be Adjudicated
Plaintiff’s fifth claim separately seeks damages for defendants’ breach of their fiduciary duties under the bylaws and breach of her proprietary lease by failing to maintain the building’s roof beams and roof. Her sixth claim seeks damages for defendants’ violation of Multiple Dwelling Law § 78 by failing to maintain the building’s common elements. The court has outlined above the evidence necessary to hold the individual defendants liable for these damages along with CASSM Realty.
Plaintiff’s proceeding for repairs in New York City Civil Court already has determined the deficient conditions of the building’s roof, roof beams, and other common elements for which CASSM Realty is liable, by ordering CASSM Realty to repair those deficient conditions. That proceeding also has determined the extent to which CASSM Realty’s failure to maintain those building components has limited plaintiff’s use of her unit and of the building’s common areas and the period of CASSM’s liability for those deficient conditions, by awarding her an abatement in her maintenance payments for a specified period.
Consequently, the court grants plaintiff summary judgment on CASSM Realty’s liability for her fifth and sixth claims consistent with the Civil Court’s disposition. (CPLR 3212 [b], [e].) Insofar as plaintiff repaired any of the common elements for which CASSM Realty has been determined liable, she is entitled to the reasonable expenses for her repairs, if they were *269 effective and reduced the repairs still required of CASSM Realty. (Halkedis v Two E. End Ave. Apt. Corp., 161 AD2d 281, 282 [1st Dept 1990]; Missionary Sisters of Sacred Heart v Meer, 131 AD2d at 397.) Insofar as she repaired any of the common elements for which CASSM Realty was not determined liable because her repairs were fully effective and the conditions were no longer deficient, she must identify those common elements as within the building conditions for which the cooperative was responsible under its bylaws and her proprietary lease. (Cohen aff, July 18, 2013, exhibit D, ¶¶ 6-8; aff of Maxi Cohen, June 18, 2014, exhibit B, § 2.07 [A].) Plaintiff also is entitled to compensation for any damage to her unit that neither she nor CASSM Realty has repaired, due to the deficient conditions of the common elements for which CASSM Realty has been determined liable. (Halkedis v Two E. End Ave. Apt. Corp., 161 AD2d at 282; Sabor A. Mexico, Inc. v 76 S. St. Corp., 127 AD3d at 953.)
V. CASSM Realty’s and O’Neill’s Liability for His Ownership and Occupancy of His Unit
A. Multiple Dwelling Law §§ 275-278
Defendants’ motion for summary judgment dismissing the fourth claim against O’Neill maintains that Multiple Dwelling Law §§ 275-278, which plaintiff claims both CASSM Realty and O’Neill have violated, does not provide plaintiff a basis to seek relief directly against either defendant. According to defendants, only DCA is authorized to enforce those laws.
Multiple Dwelling Law §§ 275-278 do not, by themselves, confer any rights on plaintiff. Section 275 simply declares the public purpose of making loft buildings formerly used as manufacturing, commercial, institutional, community, and public facilities available as accommodations “for joint living-work quarters for artists.” Section 276 defines “artist” under these statutes as a “person who is regularly engaged in the fine arts . . . or in the performing or creative arts . . . or in the composition of music on a professional basis, and is so certified by the city department of cultural affairs and/or the state council on the arts.” Section 277 permits occupancy of buildings “for joint living-work quarters for artists” only if the building meets specified conditions, all of which are structural, and none of which requires that the building or its units be occupied by artists.
Multiple Dwelling Law § 278 makes Multiple Dwelling Law § 303’s remedies applicable to joint living-work quarters for *270 artists. Even if Multiple Dwelling Law § 276 required that a building or its units be occupied by artists, such a requirement must “be enforced by the department charged with the enforcement of laws, ordinances and regulations in relation to multiple dwellings.” (Multiple Dwelling Law § 303 [1].) Whether that department is DCA or another agency, these statutes do not empower plaintiff to enforce them by seeking injunctive relief or damages against a violator. (Uhr v East Greenbush Cent. School Dist, 94 NY2d 32, 42 [1999]; Brian Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207, 213-214 [1990]; Rhodes v Herz, 84 AD3d 1, 13 [1st Dept 2011]; Hammer v American Kennel Club, 304 AD2d 74, 80-81 [1st Dept 2003]; see People v Grasso, 11 NY3d 64, 71-72 [2008]; Pelaez v Seide, 2 NY3d 186, 201 [2004]; Mark G. v Sabol, 93 NY2d 710, 722 [1999].)
B. Breach of Contractual Obligations
Plaintiff’s claim for relief, in any event, is not based directly on defendants’ violation of the Multiple Dwelling Law, but is based on their breach of contractual obligations under the bylaws and other applicable contracts between the cooperative and its building’s residents, including proprietary leases, as well as the building’s certificate of occupancy. Plaintiff seeks an injunction akin to specific performance: that O’Neill’s unit be owned and occupied by a family with an artist certified pursuant to Multiple Dwelling Law § 276, as required by these contracts, as well as the certificate of occupancy.
1. CASSM Realty’s Liability as the Governing Body
Against CASSM Realty, plaintiff seeks summary judgment enjoining the cooperative to enforce the terms of the bylaws against O’Neill and the terms of its contracts with him, which require that his unit be owned and occupied by a family with an artist certified pursuant to Multiple Dwelling Law § 276. She further claims that CASSM Realty has breached the terms of the bylaws and its proprietary lease with her that entitle her to live in a building where each unit is owned and occupied by a family with an artist certified pursuant to Multiple Dwelling Law § 276.
Defendants maintain that, insofar as CASSM Realty and its Board may enforce the bylaws, proprietary leases, or other contracts against a shareholder, their failure to enforce the requirements for an artist in O’Neill’s unit was a permissible exercise of their business judgment. According to defendants, O’Neill’s violation of the requirements for an artist in his unit has not harmed plaintiff.
*271 CASSM Realty’s Board, as the cooperative’s governing body, owes a duty to the cooperative to act for the benefit of the residents collectively. If plaintiff demonstrates that the Board’s actions breached this duty, they are subject to judicial review. (Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d at 538.) The Board also loses the protection of the business judgment rule if the Board’s actions breached the cooperative’s bylaws, a proprietary lease, or any contractual obligation to a shareholder. (Goldstone v Grade Terrace Apt. Corp., 110 AD3d 101, 105 [1st Dept 2013]; Kassover v PVP-GCC Holdingco II, LLC, 73 AD3d at 627; Whalen v 50 Sutton Place S. Owners, 276 AD2d 356, 357 [1st Dept 2000]; Dinicu v Groff Studios Corp., 257 AD2d 218, 222-223 [1st Dept 1999]; see Weinreb v 37 Apts. Corp., 97 AD3d at 57-58.)
Although the court provided both plaintiff and defendants the opportunity to supplement the record with authenticated and admissible evidence (Colon v Torres, 106 AD3d 458, 458 [1st Dept 2013]; Ostrov v Rozbruch, 91 AD3d 147, 153-154 [1st Dept 2012]; Tierney v Girardi, 86 AD3d 447, 448 [1st Dept 2011]; Ashton v D.O.C.S. Continuum Med. Group, 68 AD3d 613, 614 [1st Dept 2009]), defendants have not presented either O’Neill’s or plaintiff’s proprietary lease. (Williams v Esor Realty Co., 117 AD3d 480, 480-481 [1st Dept 2014]; Cole v Homes for the Homeless Inst., Inc., 93 AD3d 593, 594 [1st Dept 2012].) They present the complaint, to which a proprietary lease for a nonparty’s unit is annexed, and which paraphrases part of that lease’s paragraph 16 (a), but neither the complaint nor defendants allege that the leases for any two units are identical. Defendants present no bylaws or certificate of occupancy at all, although the complaint also paraphrases part of bylaws § 6.03 (1) and part of the certificate of occupancy. Therefore, insofar as defendants rely on a proprietary lease, bylaws, or a certificate of occupancy to establish that defendants are not responsible for or that plaintiff is not entitled to ownership and occupancy of the fourth floor unit by a family with an artist, defendants’ failure to support their summary judgment motion with those documents requires denial of their motion. (AQ Asset Mgt. LLC v Levine, 128 AD3d 620, 621-622 [1st Dept 2015]; Miller-Francis v Smith-Jackson, 113 AD3d 28, 34-35 [1st Dept 2013]; Suppiah v Kalish, 76 AD3d 829, 832-833 [1st Dept 2010]; Babikian v Nikki Midtown, LLC, 60 AD3d 470, 471-472 [1st Dept 2009]; see IRB-Brasil Resseguros S.A. v Eldorado Trading Corp. Ltd., 68 AD3d 576, 577 [1st Dept 2009].)
*272 Curiously, however, defendants do not rely on any of these documents’ terms. Their defense to plaintiff’s fourth claim against CASSM Realty is that, in the business judgment of the Board, it determined that the absence of an artist in O’Neill’s unit is not causing financial harm to the shareholders. Therefore the Board, consistent with its authority and the cooperative’s interests, chose not to enforce any requirement in the bylaws, O’Neill’s proprietary lease, or any other contract for an artist in his unit.
No facts, however, support the Board’s exercise of its business judgment not to enforce bylaws § 6.03 (1) against O’Neill or any contract with him requiring an artist in his unit. Defendants provide no explanation on personal knowledge of their determination. Vassilakis simply attests to the conclusion that the “cooperative board . . . exercised its business judgment in not seeking to enforce any alleged violation in respect of an artist residing in Mr. O’Neill’s unit.” (Aff in support of Thanos Vassilakis, f 31, May 24, 2012.) He nowhere attests that the Board refrained from enforcement because the Board determined that the absence of an artist in O’Neill’s unit was not causing financial harm to the shareholders or for any other reason, let alone when, where, or under what circumstances the Board so determined. He nowhere attests that the Board determined that refraining from such enforcement was consistent with the Board’s authority and the cooperative’s interests.
More significantly, even if the Board took such a position, it ignores the Board’s breach of obligations owed to plaintiff under bylaws § 6.03 (1) and her proprietary lease. The business judgment rule is inapplicable as a defense to a breach of the bylaws, a proprietary lease, or any other contractual obligation. (Goldstone v Grade Terrace Apt. Corp., 110 AD3d at 105; Kassover v PVP-GCC Holdingco II, LLC, 73 AD3d at 627; Whalen v 50 Sutton Place S. Owners, 276 AD2d at 357; Dinicu v Groff Studios Corp., 257 AD2d at 222-223.)
2. Liability under the Bylaws
Applying CASSM Realty’s bylaws annexed to the complaint and to plaintiff’s affidavit and authenticated by plaintiff, section 6.03 (1) provides that “[t]he premises are intended for residential and studio purposes by artists and their families, and including only those business pursuits in connection with the creation, display and sale of their arts works or services.” (Cohen aff, June 18, 2014, exhibit B.) While *273 this provision does not require that the premises be used for a studio purpose as long as they are used for a residential purpose and not for a business pursuit apart from the creation, display, or sale of artistic works or services, the provision does “intend” use “by artists and their families.” (Id.) Residential use by a person who is neither an artist nor an artist’s family member is not intended.
3. Liability under the “Purchasers Agreement” between CASSM Realty and O’Neill
Plaintiff further attests to O’Neill’s execution of a “Purchasers Agreement” with CASSM Realty dated June 8, 2004, when she was the Board president, for the purchase of his fourth floor unit in the building. In that agreement O’Neill, as the “Purchaser,” agreed to comply with its bylaws and “to pay those costs, penalties or expenses, whether they are imposed on the Purchaser or the Corporation, that arise directly from Purchaser’s failure so to comply.” (Id., exhibit C, ¶ 2.)
Even more significantly, this agreement further provides that
“3. Purchaser understands that the provisions of the Certificate of Occupancy for the building and the New York Zoning Resolution applicable to the building requires that the Unit be occupied in whole or in part as ‘Joint Living-Work Quarters for Artist’ and that this requires that at least one occupant of the apartment must be an artist certified as such by the New York City Department of Cultural Affairs. If no certified artist is in residence, the occupancy is not legal.
“4. As the purchaser of the Unit, Purchaser agrees (i) to be responsible for producing, upon demand of any authorized municipal authority, an artist’s certification from the New York City Department of Cultural Affairs for a[t] least one occupant of the Unit; and (ii) to indemnify the corporation against any and all costs and expenses reasonably incurred by it, including reasonable legal fees, fines and penalties that arise from Purchaser’s failure to produce such certification.
“5. Purchaser further agrees that in the event Purchaser is unable within sixty (60) days to (i) produce such artist’s certification, or (ii) otherwise comply with the requirements of the Certification of Occupancy, the Zoning Resolution and/or the *274 requirements of the Corporation pertaining to the scope of this Agreement, Purchaser will forthwith take such actions as may be required in the discretion of the Corporation including, without limitation, the sale of the shares of stock in the Corporation, and the vacatur of the unit.” (Id. [emphases added].)
Thus, even if the bylaws’ provision that use “by artists and their families” is “intended” (id., exhibit B, § 6.03 [1]), is merely precatory, O’Neill’s purchasers’ agreement “requires” that at least one occupant of his unit be a certified artist. (Id., exhibit C, f 3.) Similarly, even if the Multiple Dwelling Law does not mandate a certified artist in occupancy of each unit, the purchasers’ agreement renders the absence of a certified artist in occupancy of O’Neill’s unit unlawful, “not legal,” under that contract. (Id.)
Under paragraph 4 of the purchasers’ agreement, only DCA or another municipal authority will trigger any consequences from the absence of a certified artist occupying O’Neill’s unit. In that event, his obligation to indemnify the corporation fully protects it and plaintiff’s interest in the corporation and the building.
In the event of municipal authorities’ inaction, purchasers’ agreement f 5 still empowers CASSM Realty, in its “discretion,” to require O’Neill’s sale of his shares in the corporation and vacatur of his unit if no artist is occupying it. (Id. ¶ 5.) CASSM Realty’s power is discretionary, however, so that the corporation at least might await a municipal authority’s action before taking any responsive action. CASSM Realty derives no benefit itself from its contract requiring an artist to occupy O’Neill’s unit, yet the contract unambiguously intends compliance with this requirement. (Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38, 44-45 [1985]; National Union Fire Ins. Co. of Pittsburgh, Pa. v Red Apple Group, 309 AD2d 657, 657 [1st Dept 2003]; see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011]; Mendel v Henry Phipps Plaza W., Inc., 6 NY3d 783, 786 [2006]; State of Cal. Pub. Employees’ Retirement Sys. v Shearman & Sterling, 95 NY2d 427, 434 [2000]; Edge Mgt. Consulting, Inc. v Blank, 25 AD3d 364, 368-369 [1st Dept 2006].) CASSM Realty is imposing this requirement for no reason other than for the benefit of the building residents, to whom CASSM Realty owes its overarching duty, and who thus are the beneficiaries of the building’s status as an artist’s residence. (Cornhusker Farms, Inc. v Hunts *275 Point Coop. Mkt., Inc., 34 AD3d 309, 310 [1st Dept 2006]; Gap, Inc. v Fisher Dev., Inc., 27 AD3d 209, 211-212 [1st Dept 2006]; National Union Fire Ins. Co. of Pittsburgh, Pa. v Red Apple Group, 309 AD2d at 657; Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co., 261 AD2d 117, 123 [1st Dept 1999]; see Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d at 45; Edge Mgt. Consulting, Inc. v Blank, 25 AD3d at 368-369; Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp., 291 AD2d 40, 57 [1st Dept 2001].) As the beneficiaries of the building’s status, its residents are the immediate and direct beneficiaries of the requirements in the purchasers’ agreement that O’Neill use his unit consistent with that status. (Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d at 45; Cornhusker Farms, Inc. v Hunts Point Coop. Mkt., Inc., 34 AD3d at 310; National Union Fire Ins. Co. of Pittsburgh, Pa. v Red Apple Group, 309 AD2d at 657; Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co., 261 AD2d at 123; see Mandarin Trading Ltd. v Wildenstein, 16 NY3d at 182; Mendel v Henry Phipps Plaza W., Inc., 6 NY3d at 786; State of Cal. Pub. Employees’ Retirement Sys. v Shearman & Sterling, 95 NY2d at 434; Edge Mgt. Consulting, Inc. v Blank, 25 AD3d at 368.)
While these requirements in the purchasers’ agreement impose no obligation on CASSM Realty, they do obligate O’Neill to conform the fourth floor unit so that its owner or a family member of the owner in occupancy is a certified artist. Thus there is no obligation of CASSM Realty under the agreement for plaintiff or other shareholders to enforce, but the agreement does entitle plaintiff as a third-party beneficiary to enforce O’Neill’s obligation against O’Neill. (Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d at 45; Gap, Inc. v Fisher Dev., Inc., 27 AD3d at 211-212; National Union Fire Ins. Co. of Pittsburgh, Pa. v Red Apple Group, 309 AD2d at 657; Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co., 261 AD2d at 123; see Edge Mgt. Consulting, Inc. v Blank, 25 AD3d at 368-369.) Therefore the court grants plaintiff summary judgment on her fourth claim against O’Neill, to the extent that he has breached his obligation to conform the fourth floor unit to purchasers’ agreement ¶¶ 3 and 5, so that the unit owner or a family member of the owner in occupancy is a certified artist. (CPLR 3212 [b], [e].) Concomitantly, the court denies defendants’ motion for summary judgment insofar as their motion seeks to dismiss plaintiffs fourth claim against O’Neill. (CPLR 3212 [b].)
*276 The absence in the purchasers’ agreement of any direct requirement that CASSM Realty enforce the agreement does not abrogate the rights retained by plaintiff and other shareholders to enforce the duty of CASSM Realty and its Board to use their authority to act for the residents’ benefit (Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d at 538), as well as their rights under the bylaws and proprietary leases. As set forth above, defendants have failed to show that the absence of an artist in O’Neill’s unit has caused no financial or other harm to the shareholders, any other reason for the Board’s determination to forgo enforcement, or that inaction was consistent with the Board’s authority and the cooperative’s interests. On the other hand, so too has plaintiff failed to show that the absence of an artist in O’Neill’s unit has caused harm to the shareholders as a whole or that forgoing enforcement was inconsistent with the Board’s authority and the cooperative’s interests.
The record thus fails to illuminate the countervailing interests and considerations bearing on CASSM Realty’s fiduciary duty to take action against O’Neill to occupy the fourth floor unit by an owner or a family member of the owner who is a certified artist. Therefore the court denies plaintiff summary judgment on her fourth claim against CASSM Realty insofar as this claim is based on CASSM Realty’s fiduciary duty rather than its contractual obligation. The court’s decision on CASSM Realty’s contractual obligation below, as well as O’Neill’s compliance with any injunction granted against him, however, will render moot the issue of CASSM Realty’s fiduciary duty.
4. The Proprietary Leases
Plaintiff claims that CASSM Realty’s proprietary lease with O’Neill also entitles her, as a third-party beneficiary of that contract, to live in a building where his unit, like other units, is owned and occupied by a family with an artist, as is likewise guaranteed by her proprietary lease with CASSM Realty. (Cornhusker Farms, Inc. v Hunts Point Coop. Mkt., Inc., 34 AD3d at 310; Gap, Inc. v Fisher Dev., Inc., 27 AD3d at 211-212; National Union Fire Ins. Co. of Pittsburgh, Pa. v Red Apple Group, 309 AD2d at 657; Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co., 261 AD2d at 123; see Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d at 44-45; Edge Mgt. Consulting, Inc. v Blank, 25 AD3d at 368-369.) While recognizing the strict requirements for conferring third-party *277 beneficiary status, absent CASSM Realty’s proprietary lease with O’Neill, the court may not grant either O’Neill or plaintiff summary judgment on plaintiff’s claim as a third-party beneficiary of that contract. (Mandarin Trading Ltd. v Wildenstein, 16 NY3d at 181-182; Mendel v Henry Phipps Plaza W., Inc., 6 NY3d at 786; State of Cal. Pub. Employees’ Retirement Sys. v Shearman & Sterling, 95 NY2d at 434-435; Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp., 291 AD2d at 57.)
Paragraph 16 (a) of CASSM Realty’s proprietary lease with plaintiff expresses an intent like bylaws § 6.03 (1), but, unlike its precatory terms, expresses that intent in mandatory terms: “It is intended that the Building, shall be occupied by artists and their families as combined living-working quarters and for business purposes in connection with the creation, display and sale of their art work or services (to the extent permitted by law).” (Cohen aff, July 18, 2013, exhibit D [emphasis added].) This provision entitles plaintiff, as a party to that contract, to live in a building occupied by artists and their families. Although paragraph 16 (a) does not specify that the building be occupied only by artists and their families, to construe the provision as permitting occupants who are not artists and their family members would render the provision meaningless (Cole v Macklowe, 99 AD3d 595, 596 [1st Dept 2012]; Warner v Kaplan, 71 AD3d 1, 5 [1st Dept 2009]; Nautilus Ins. Co. v Matthew David Events, Ltd., 69 AD3d 457, 460 [1st Dept 2010]; RM 14 FK Corp. v Bank One Trust Co., N.A., 37 AD3d 272, 274 [1st Dept 2007]), or inject into it qualifiers that are not there. (New York State Ins. Fund v Everest Natl. Ins. Co., 125 AD3d 536, 537 [1st Dept 2015]; Camaiore v Farance, 50 AD3d 471, 471-472 [1st Dept 2008]; see Fresh Del Monte Produce N.V. v Eastbrook Caribe A.V.V., 40 AD3d 415, 419 [1st Dept 2007].) Absent a requirement like paragraph 16 (a), nonartists always are permitted to lease and occupy residential building units. If the proprietary lease’s intent was simply to ensure that a majority or most of the buildings’ units be occupied by artists and their families, CASSM Realty readily could have inserted such qualifying terms. (New York State Ins. Fund v Everest Natl. Ins. Co., 125 AD3d at 537; Camaiore v Farance, 50 AD3d at 471-472; see Matter of Mostow v State Farm Ins. Cos., 88 NY2d 321, 326 [1996]; QBE Ins. Corp. v Public Serv. Mut. Ins. Co., 102 AD3d 442, 443 [1st Dept 2013].)
Significantly, construing plaintiffs proprietary lease ¶ 16 (a) to require occupancy only by artists and their families is *278 consistent with the intent unequivocally expressed by bylaws § 6.03 (1): that residential use by a person who is neither an artist nor an artist’s family member is not intended. Similarly, according to proprietary lease ¶ 16 (a), it is not intended that the building be occupied by nonartists or their families. This construction is also consistent with CASSM Realty’s purchasers’ agreement with O’Neill, which “requires that at least one occupant of the apartment must be an artist.” (Cohen aff, June 18, 2014, exhibit C, f 3.) Applying this construction of proprietary lease ¶ 16 (a), the court grants plaintiff summary judgment on her fourth claim against defendant CASSM Realty, to the extent that CASSM Realty has breached its proprietary lease ¶ 16 (a) with her by failing to assure that the building, including its fourth floor unit, is occupied only by certified artists and their family members. (CPLR 3212 [b], [e].)
5. The Certifícate of Occupancy
Plaintiff does not claim any statutory or contractual authority on CASSM Realty’s part to enforce the certificate of occupancy. Based on her proprietary lease and the bylaws, except insofar as those documents require what the certificate of occupancy requires, they do not authorize the cooperative to enforce the certificate of occupancy.
6. The Harm
Vassilakis attests that O’Neill’s misuse of his unit and the corporation’s failure to enforce any requirements governing the use of his unit has not affected plaintiff, but the harm that plaintiff alleges is harm not only to her individually, but to all the shareholders other than O’Neill. While plaintiff has failed to rebut the Board’s conclusion that the use of O’Neill’s unit is not causing any financial harm to the shareholders, nor shown that this reason was not the true basis for the Board’s inaction against O’Neill, she nonetheless maintains that his unit’s use jeopardizes the building’s status as an artist’s residence and its benefits to the shareholders.
Although an individual shareholder lacks standing to recover for injuries to the corporation (New Castle Siding Co. v Wolfson, 63 NY2d 782, 784 [1984]; MatlinPatterson ATA Holdings LLC v Federal Express Corp., 87 AD3d 836, 839 [1st Dept 2011]; Rogers v Ciprian, 26 AD3d 1, 6 [1st Dept 2005]; Evangelista v Slatt, 20 AD3d 349, 350 [1st Dept 2005]), defendants waived any lack of standing by plaintiff when their answer omitted that affirmative defense. (Wells Fargo Bank, NA v Edwards, 95 *279 AD3d 692 [1st Dept 2012]; Security Pac. Natl. Bank v Evans, 31 AD3d 278 [1st Dept 2006].) Plaintiff’s claim against CASSM Realty in any event is not for the harm to CASSM Realty per se, which would be CASSM Realty’s claim, not plaintiffs. (See Dragon Inv. Co. II LLC v Shanahan, 49 AD3d 403, 404 [1st Dept 2008].) Her claim against CASSM Realty is for its failure to prevent the harm that O’Neill will cause to the building’s status as an artist’s residence.
Even if plaintiff lacks standing to require CASSM Realty to enforce its purchasers’ agreement with O’Neill or its bylaws against him, or it owes no duty of enforcement, she is entitled to enforce her rights to live and work in a building where each unit is owned and occupied by a family with an artist as guaranteed by her proprietary lease with CASSM Realty. Although she has not shown that the building’s status as an artist’s residence is at imminent risk due to O’Neill’s ownership and occupancy of his unit or what harm, financial or otherwise, loss of that status would cause the building or the cooperative, she still claims noneconomic harm from deprivation of her entitlement to live and work in the environment for which she contracted.
7. Relief against O’Neill and CASSM Realty
Even where defendants claim a shareholder’s lack of standing, a shareholder still may maintain a claim against an individual party whose violation of a duty to the shareholders injured her, if the individual’s duty is separate from any duty to the corporation. (MatlinPatterson ATA Holdings LLC v Federal Express Corp., 87 AD3d at 839; Behrens v Metropolitan Opera Assn., Inc., 18 AD3d 47, 50 [1st Dept 2005].) The duty O’Neill owes to plaintiff that she claims he has violated, causing her injury, is set forth in his purchasers’ agreement, interpreted consistent with the bylaws, and also may be in his proprietary lease and the certificate of occupancy, but, as discussed above, no party presents these latter two documents in authenticated and admissible form. Relying simply on the admissible proprietary lease presented, and assuming each unit owner’s proprietary lease confers the same rights and obligations on CASSM Realty and on the owner, however, plaintiff’s proprietary lease does not confer any obligations on O’Neill, and his proprietary lease would not confer any rights on plaintiff.
There are nonetheless one or more bases on which to award relief for both CASSM Realty’s and O’Neill’s breaches of their *280 contractual obligations: CASSM Realty’s proprietary lease with plaintiff and O’Neill’s purchasers’ agreement with CASSM Realty, of which plaintiff is a third-party beneficiary. The question remains whether the harm shown and the other attendant circumstances warrant specific performance or the comparable injunctive relief sought: that defendants conform the fourth floor unit so that its owner or the owner’s family member in occupancy is a certified artist. To obtain the injunctive relief plaintiff seeks, she must show a current or a threatened imminent violation of her rights that is causing or about to cause an irreparable injury. (Weinreb v 37 Apts. Corp., 97 AD3d at 59; Lemle v Lemle, 92 AD3d 494, 500 [1st Dept 2012]; Mini Mint Inc. v Citigroup, Inc., 83 AD3d 596, 597 [1st Dept 2011]; see Goldstone v Gracie Terrace Apt. Corp., 110 AD3d at 105-106.) Plaintiff conclusively shows a current and ongoing violation of her rights (McCain v Koch, 70 NY2d at 118; Likokas v 200 E. 36th St. Corp., 48 AD3d at 245), but no imminent danger of an irreparable injury to necessitate an injunctive remedy. (Lemle v Lemle, 92 AD3d at 500; Blutreich v Amalgamated Dwellings, Inc., 46 AD3d 352, 353 [1st Dept 2007]; see Goldstone v Gracie Terrace Apt. Corp., 110 AD3d at 105-106.) If the injury is minor, it may not amount to irreparable harm, even though it may entitle plaintiff to a compensatory remedy. (See id.) Moreover, plaintiff fails to demonstrate that her claimed injury from CASSM Realty’s and O’Neill’s breaches of their contractual obligations regarding O’Neill’s use of the fourth floor unit is not compensable by monetary damage. (Lemle v Lemle, 92 AD3d at 500; see Goldstone v Gracie Terrace Apt. Corp., 110 AD3d at 105-106.)
To obtain the equitable remedy of specific performance of the contracts breached, plaintiff also must show that damages are an inadequate remedy. (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 415 [2001]; Cho v 401-403 57th St. Realty Corp., 300 AD2d 174, 175 [1st Dept 2002].) Specific performance is the better remedy if “the subject matter of the particular contract is unique and has no established market value.” (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d at 415; Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 193 [1986]; see Cho v 401-403 57th St. Realty Corp., 300 AD2d at 175.) The value to an artist of living and working in an environment of other artists, as well as the security that the building will not be subject to penalties that the cooperative may need to recover from the violator or may be incapable of *281 recovering, is likely insusceptible of an ascertainable market value. (Stellar Sutton LLC v Dushey, 82 AD3d 485, 486 [1st Dept 2011].) The court must consider “the difficulty of proving damages with reasonable certainty” (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d at 415; Cho v 401-403 57th St. Realty Corp., 300 AD2d at 175); the consequent “risk of under-compensation” (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d at 193); and plaintiffs inability to procure the environment she seeks with a monetary award. (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d at 415; Cho v 401-403 57th St. Realty Corp., 300 AD2d at 175.) If damages for defendants’ breaches are conjectural and may not be calculated with reasonable certainty, defendants must be compelled to perform their contractual obligations. (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d at 195.)
On the other side of the equation, to balance the equities of this equitable remedy, the court also must consider the burden that specific performance would impose on defendants and weigh the benefit to plaintiff against the harm to defendants. (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d at 195; Cho v 401-403 57th St. Realty Corp., 300 AD2d at 175.) Requiring O’Neill to sell his shares and vacate his unit might not harm or unduly burden CASSM Realty, but might inflict hardship on O’Neill disproportionate to the benefit derived by plaintiff. (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d at 195.)
Even as an alternative to specific performance, damages may not be warranted. Although O’Neill has unlawfully breached his purchasers’ agreement, of which plaintiff and the other shareholders are third-party beneficiaries, and deprived them of their rights to live in a building where each unit is owned and occupied by a family with an artist, plaintiff has not articulated any concrete injury as a result of O’Neill’s breach. So far, plaintiff has not demonstrated that the absence of an artist in O’Neill’s unit is causing her financial harm or preventing her from living and working in the building as she did before he occupied his unit. If his occupancy does cause such harm, then she may be entitled to specific performance or other injunctive relief for his unlawful breach. If the breach has caused no appreciable injury to plaintiff, no damages may flow from that breach. (Cipriano v Glen Cove Lodge #1458, B.P.O.E., 1 NY3d 53, 62 [2003].)
Because the grounds for relief are constantly evolving, and the record at this stage is insufficient to assess the competing *282 considerations, the relief to be awarded must be assessed based on the current facts on a full record at the time of trial. (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d at 415; Stellar Sutton LLC v Dushey, 82 AD3d at 486; Cho v 401-403 57th St. Realty Corp., 300 AD2d at 175.) In the meantime, plaintiff may make efforts to secure the Board’s initiation of action against O’Neill to effect his unit’s compliance with his purchasers’ agreement, the building’s bylaws, its certificate of occupancy, or any zoning provision. (E.g. Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413-414 [1987]; Zupa v Paradise Point Assn., Inc., 22 AD3d 843, 843-844 [2d Dept 2005]; Williams v Hertzwig, 251 AD2d 655, 656 [2d Dept 1998]; see Business Corporation Law § 626 [c].)
VI. CASSM Realty’s Breaches of Plaintiff’s Proprietary Lease
In the respects set forth above, plaintiff also is entitled to summary judgment on her first claim for CASSM Realty’s breach of her proprietary lease, allowing her to recover resulting damages not determined in her New York City Civil Court proceeding. (CPLR 3212 [b], [e].) First, CASSM Realty breached the lease by failing to maintain common areas and elements of its building within its control, rendering plaintiff’s unit uninhabitable or unusable for its intended function as living-work quarters, and necessitating her vacatur of her unit due to those conditions. These breaches entitle plaintiff, for the period of her necessary vacatur, to either (a) reasonable expenses for comparable alternative living-work quarters to the extent those expenses exceeded her maintenance payments or, if alternative living-work quarters were available without a charge, (b) the difference between her unit’s reasonable rental value and her maintenance payments.
Second, even if and when the conditions of the building’s roof beams, the roof, and other common areas or elements did not necessitate plaintiff’s vacatur of her unit, CASSM Realty also breached her proprietary lease by failing to maintain those building conditions. These breaches further entitle plaintiff to (a) her reasonable expenses for repairs to those deficient conditions required of CASSM Realty, but made by her due to its neglect of that duty under her proprietary lease, and (b) compensation for damage to her unit that those conditions caused, but that have not been repaired.
Finally, CASSM Realty has breached plaintiff’s proprietary lease by failing to assure that the building, including its fourth *283 floor unit, is occupied only by certified artists and their family members. This breach entitles plaintiff to damages under her first claim, independently from her fourth claim, for any resulting concrete injury, whether from being prevented from living and working in the building as she did before nonartists occupied the fourth floor unit, specific financial harm, or other specific appreciable harm.
VII. Conclusion
In sum, for the reasons explained above, the court grants plaintiffs cross motion for summary judgment on her:
1. First claim for defendant CASSM Realty Corp.’s breaches of her proprietary lease in the three respects set forth above, entitling her to damages;
2. Second claim for CASSM Realty’s constructive eviction of her from her unit, for the period determined by her proceeding in New York City Civil Court, entitling her to one of the two alternative categories of damages set forth above;
3. Third claim for injunctive relief against CASSM Realty requiring it to (a) provide plaintiff its annual financial statements of income and expenses, including itemized expenditures above $1,000 and the amount of her maintenance payments al-locable to real estate taxes, interest, and amortization of mortgage indebtedness, from 2006 and continuing annually; (b) maintain an accounting system that records its financial transactions completely and accurately and a financial record keeping system that will enable plaintiff to review its complete financial records; (c) refrain from expenditures above $1,000 absent approval by 80% of its Board; (d) refrain from payments to the attorney for defendant O’Neill or for defendant Vassila-kis; and (e) collect financial assessments, maintenance payments, late fees, and interest to pay taxes, fines, and other assessments against CASSM Realty’s building timely and to pay operating expenses;
4. Fourth claim, to the extent that CASSM Realty has violated its proprietary lease with plaintiff, and O’Neill has violated his purchasers’ agreement with CASSM Realty;
5. Fifth claim against CASSM Realty for breaches of its duty to maintain its building roof beams and roof under the bylaws and plaintiff’s proprietary lease, entitling plaintiff to damages for repairs made by her and for unrepaired damage to her unit.
6. Sixth claim against CASSM Realty for violation of Multiple Dwelling Law § 78, by failing to maintain the building’s com *284 mon elements, entitling plaintiff to damages for repairs made by her and for unrepaired damage to her unit. (CPLR 3212 [b], [e].)
The court otherwise denies plaintiffs cross motion (CPLR 3212 [b]), and denies defendants’ motion for summary judgment dismissing plaintiffs second claim; grants the motion to the extent of dismissing her third and fifth claims against O’Neill and Vassilakis; and denies the motion dismissing her fourth claim against O’Neill. (CPLR 3212 [b], [e].)